### FEDERAL OIL CO. v. WESTERN OIL CO. et al.

(Circuit Court, D. Indiana. January 11, 1902.)

#### No. 10,034.

1. CONTRACTS—UNCONSCIONABLE—SPECIFIC PERFORMANCE—EQUITY.

In an action to enforce specific performance of a contract, any fact showing that the contract is unfair, unjust, and against good conscience will justify the court in refusing such decree, though the contract may be enforceable at law, and there is no sufficient ground for its cancellation.

2. SAME—LEASE—OIL AND GAS.

A lease, for the nominal consideration of $1, for the purpose of drilling and operating for oil and gas,—the lessor to receive a certain proportion of the oil and gas obtained,—which does not obligate the lessee to commence or prosecute such operations, and which he may terminate at his pleasure without compensation to the lessor, is unconscionable, and should not be enforced.

3. SAME—DEVELOPMENT OF OIL LANDS—CONSIDERATION.

Where, under a lease for the purpose of drilling and operating for oil and gas, the only consideration to the lessor is the prospective royalties to arise from exploration and development, and the lessee fails for eight months to commence such development, the agreement is without consideration, and may be abandoned by the lessor.

4. SAME—AGREEMENT TO COMPLETE WELLS.

Where, in a lease of oil lands, the lessee agrees to complete a second well within 90 days after the completion of the first well, but does not agree to complete or even to commence the first well, such agreement as to the second well is no consideration for the contract.

5. SAME—BINDING ONLY ONE PARTY.

The court will not decree that one party shall specifically perform a contract which the other party, at his option, may refuse to carry out.

In Equity.

This is a suit in equity to compel the enforcement of a lease for mining for oil and gas. The bill alleges that the defendants Bradford and wife on February 22, 1901, executed to the complainant a lease as follows: "In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, R. W. Bradford, of Van Buren, Ind., of the first part, hereby grant and guaranty unto the Federal Oil Company, a corporation, of Chicago, state of Illinois, second party, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil and gas, and to erect and maintain all buildings and structures and lay all pipes necessary for the produc-

tion and transportation of oil or gas. The first party shall have the one-eighth part of oil produced and saved from said premises, to be delivered in the pipe line with which second party may connect their wells, namely, all that certain lot of land described as follows, to wit: South half of the northwest quarter of section ten, town twenty-five north, range nine east, in county of Grant and state of Indiana, containing eighty acres, more or less. To have and to hold the above-described premises on the following conditions: If gas only is found, in sufficient quantities to transport, second party agrees to pay first party one hundred dollars annually for the product of each and every well so transported, and the first party to have gas free of cost for heating and lighting purposes in dwelling house. Second party shall bury all oil and gas lines when same interferes with cultivation, and pay all damage done by reason of operating under this grant. In case no well is commenced within one day from this date, then this grant shall become null and void, unless second party shall thereafter pay at the rate of eight dollars and seventy-five cents ($8.75) for each month such commencement is delayed, in advance. A check to the credit of the first party, mailed to Van Buren, Ind., will be good and sufficient payment for any money falling due on this grant. First party has right to locate roads to and from places of operations. No well shall be drilled nearer to buildings than three hundred feet, unless by agreement and with an understanding between the parties hereto. Second party to erect and maintain gates and keep same closed. Shackle lines shall be high enough for team to pass under. Second well shall be completed ninety days after first well, and a well each ninety days thereafter until seven wells are in. Then rental to cease. The second party shall have the right to use sufficient gas, oil, and water to run all machinery for operating said wells, also the right to remove all its property at any time, and may cancel and annul this contract, or any part thereof, at any time. It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, successors, and assigns." This lease was properly acknowledged and was duly recorded on March 4, 1901. The complainant avers performance on its part of all the conditions and terms of the lease; that it has paid the rentals as in the lease provided, which rentals were received and accepted by the lessors until the payment required to be made October 22, 1901; that on October 19, 1901, the complainant mailed to the lessor R. W. Bradford a check for $8.75, as required by the lease, which he received, but refused to accept; that he returned the check to the complainant, stating that he would no longer be bound by the lease; that, disregarding the rights of the complainant, Bradford and wife have attempted to lease, and have placed the Western Oil Company in possession of, the premises; that the Western Oil Company has wrongfully entered upon the demised premises, and is wrongfully drilling thereon for gas and oil; that on November 14, 1901, the complainant moved material onto said premises for the purpose of erecting a structure to be used in drilling for gas and oil, and on November 16, 1901, the Western Oil Company wrongfully removed said material from the leased premises, and Bradford acquiesced in and approved of such removal; that the wrongful acts of the defendants cast a cloud upon the complainant's leasehold title; and that if they are not restrained the defendants will do great and irreparable injury to the complainant's rights. The complainant prays for an injunction restraining the defendants from setting up any claim or right adverse to that claimed by the complainant, and from entering upon the demised premises; that the complainant's title be quieted; and that the defendants be enjoined from in any manner asserting any right or title adverse or hostile to the leasehold title of the complainant. To this bill the defendants have filed their joint and several demurrer.

John L. Griffiths and Elmer H. Adams, for complainant.

Cable & Parmenter, Gavin & Davis, and Charles & Brown, for defendants.

BAKER, District Judge (after stating the facts as above). The defendants contend that the bill cannot be maintained—First, be-

cause the complainant is not bound to drill for gas or oil, and is not bound to pay for failure so to do, and that at the end of any month it may cease to pay rent, and no right of action therefor would exist in favor of the lessors for such default; second, because the complainant has the right at any time to remove all its property from the demised premises, and to annul and put an end to the lease. The only consideration yielded at the time of making the lease was $1 in hand paid by the complainant to the lessors. As will be seen later, there was no binding promissory consideration on the part of the complainant for the execution of the lease. The bill, which is verified, alleges that the leasehold interest claimed to have been acquired exceeds $2,000 in value. The cash payment, if actually made, was merely nominal, and it is quite apparent from a consideration of the terms of the whole lease that the lessors would not have executed it for any such paltry consideration. If there was no further consideration which the lessee was bound to yield to the lessors, a court of equity would be bound to refuse the enforcement of the lease. The consideration would be so trifling, compared with the value of the leasehold interest, as to shock the moral sense. An agreement may be enforceable at law, and there may be no sufficient ground for its cancellation in equity; and yet, upon a fair and just consideration of the attendant and collateral circumstances, the court may be satisfied that the contract is unconscionable, and refuse to decree its performance. Before granting a decree the court must be satisfied not only of the existence of a valid contract, free from fraud and enforceable at law, but also of its fairness and of its harmony with equity and good conscience; and any fact showing that the contract is unfair, unjust, and against good conscience will justify the court in refusing to decree its performance. Such, manifestly, is the character of the lease in question. Oil leases stand upon quite different grounds from leases of other immovable property. The governing principle in gas and oil leases of the character in question is that the discovery and production of gas or oil is a condition precedent to the existence and continuance of any vested estate in the demised premises. Where, as in this case, the only consideration is prospective royalties to arise from exploration and development, failure to promptly explore and develop the demised premises renders the agreement nudum pactum, and works a forfeiture of the lease, for it is of the essence of such a lease that the work of exploration shall be commenced and prosecuted with promptness. The smaller the tract of land demised, the more imperative is the need of prompt exploration and development, because the lessor is entitled to his royalty as promptly as it can be had, and delay endangers the drainage of the oil and gas from the demised premises through wells in its immediate vicinity. Leases of coal, stone, and other like materials are corporeal hereditaments, and constitute an essential part of the land itself, and are capable of present, absolute grant, while oil and gas are of a fugitive and volatile nature, a grant of either of which creates only an inchoate right, which will become absolute only upon its reduction to possession. A lease to mine for oil or gas is a mere incorporeal right to

be exercised in the land of another. It is a profit à prendre, which may be held separate and apart from the possession of the land itself. Except to the extent of $1, the lessee has yielded no consideration for the lease; nor is it bound by any enforceable promise or covenant, for the breach of which the lessors would have a right of action to compel the payment or yielding of any further consideration whatever. The lessors' right to a portion of the oil can only arise when it has been produced and saved on the premises. The lessors have a right to a royalty for gas only when it is found in sufficient quantities to transport, and then only for the product of each well when actually transported. The complainant, it is true, agrees that the second well shall be completed within 90 days after the first well, and that a well shall be drilled each 90 days thereafter until seven wells are sunk; but the complainant does not agree that it will ever drill the first well. Doubtless the lessors expected the exploration and development of the demised premises to commence at once, but the language of the lease is that, "in case no well is commenced within one day from this date, then this grant shall become null and void," unless the complainant should thereafter pay in advance at the rate of $8.75 for each month such commencement is delayed. Thus it is seen that the complainant is under no obligation enforceable at law ever to commence the drilling of the first well, and it is under no obligation to pay for failure to commence or complete the sinking of the first well. The provision that the second well shall be completed within 90 days after the first well is sunk is not enforceable at law, because the complainant is not bound ever to commence or complete the first well. The complainant is under no obligation to pay the monthly rental of $8.75. The lessors could maintain no action to recover the same if the complainant should refuse to continue payment. Such a lease is without consideration, and must be held a nudum pactum and void. A lease so unfair, inequitable, and against good conscience no court ought to enforce.

And for another reason the court cannot enforce this lease: The lease expressly provides that the complainant shall have the right to remove all its property from the demised premises at any time, and may cancel and annul this contract, or any part thereof, at any time. It is a well-settled rule of law that a lease which is determinable at the will of one party is equally determinable at the will of the other party. Knight v. Iron Co., 47 Ind. 105, 17 Am. Rep. 692.

And for a still further reason the court must refuse to enforce this lease: The court will not decree that one party shall specifically perform a contract which the other party, at its option, may refuse to carry out. It is of the essence of a decree that it should be mutually binding and conclusive on both parties. It would be an idle formality for the court to enter a decree against the defendants in this case, for the reason that the complainant has the right to render the decree ineffective at any moment that it pleases. Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955.

For these reasons the demurrer is sustained and the bill dismissed for want of equity, at the costs of the complainant, and the temporary restraining order heretofore granted is dissolved.