## Powers et al. v. Mahan-Jellico Coal Company.

(Decided June 24, 1932.)

666

C. B. UPTON and R. L. POPE for appellants.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to February 5, 1915, J. L. Powers and his wife, the appellant and one of the plaintiffs below, Elizabeth Powers, jointly owned a tract of land in Whitley county containing about 115 acres and under which were workable veins of coal. On that day they executed a lease to appellee and defendant below, Mahan-Jellico Coal Company, whereby in consideration of its promise to pay lessors 8 cents royalty per ton for all coal mined, they conferred the exclusive right on defendant to take out the coal from under their land for a period of 20 years, or until minable coal thereunder was exhausted, whether shorter or longer than that time. Provisions were made for inspection of books of the lessee by the lessors and for quarterly payments of royalties, etc., but there was no provision for a minimum royalty. The leased tract lay behind another one known in this record as the "Louisville Property Company Land," and which was then under lease for the same purpose by defendant, and which it had operated for a number of years, and at the date of the Powers lease it had driven its entries to a considerable extent through that land. The parties to the Powers lease contemplated that the coal under the Powers tract was to be reached by defendant as lessee of the Powers land, through the driven entries under the Louisville Property Company land, since the cost of constructing a railroad or tramway to the Powers land for the purpose of mining coal thereunder would be so great as to render the mining thereof unprofitable.

Hence it was inserted in the Powers lease that:

"The Lessee further covenants and agrees to enter upon said leased premises as soon as its entries have been driven through the Louisville Property Company land to the leased premises, and to plan, operate and conduct the mining operations on said

land in skillful, judicious and workmanlike manner; to handle the coal so as to have as little waste as possible and to drive each entry through the leased premises with energy and labor in proportion to the way its entries are driven through the lands of the Louisville Property Company; provided however, (if) the Lessee should strike faulty or irregular coal in its entries on the Louisville Property Company land before reaching the leased premises and if in the judgment of the Lessee the entries cannot be driven into the property of the Lessor, then this instrument and lease shall be surrendered unto the Lessor and be declared null and void and by such surrender cancelling all contracts and stipulations made in this contract and agreement.''

Another clause in the Powers lease reads:

''It is further covenanted and agreed that if at any time during the term of this lease, it shall happen that by the act of God, the failure of the supply of workable coal on the leased premises, or the occurrence of faults or other obstructions in the mines, and without the fault of the Lessee it shall become permanently impossible with due diligence and capital to carry on mining operations on said premises with profit then the Lessee shall have the right to surrender this lease by giving sixty days notice of such surrender to the Lessor.''

Soon after the date of the lease, the entries through the Louisville Property Company land reached the line between that tract and the Powers tract, and they were driven into the latter tract, and mining operations by defendant were engaged in from thence until the early part of 1920, during which time a considerable amount of coal was taken from under the Powers tract, and for which royalty was paid in accordance with the terms of the lease. The last payments of royalties were made some time in the spring of 1920, none being made thereafter, and in 1923 J. L. Powers died, leaving surviving him his widow, the plaintiff Elizabeth Powers, and the other appellants and plaintiffs below, as his heirs.

On November 8, 1929, appellants, as joint plaintiffs below, filed this action against defendant, seeking to recover a judgment against it for $42,000 as damages

flowing from violations of the terms of the lease in failing to prosecute the mining privileges granted to it by the lease, and in wrongfully abandoning it and in suffering and permitting the entries through the Louisville Property Company land (the only contemplated means of reaching the Powers lease) to become destroyed by removing the pillars of coal therein and causing the entry to become stopped, and also for the same damage suffered and permitted by defendant on that portion of the Powers land from which coal was extracted up to the time of the abandonment of the lease, and all of which created a situation rendering the future removal of the balance of the coal under the Powers tract practically impossible because of the great expenses necessary to be incurred in reaching it. Claimed amounts for the various items of damage were set out in the petition and its amendments; but, inasmuch as the court did not pass on any of them (as will hereinafter appear), we will likewise not do so in advance of a ruling of the trial court thereon.

There was neither a special nor a general demurrer filed to the petition, but the answer filed to it, as amended, defended upon a number of grounds, among which was that defendant ceased mining operations under the Powers lease because of the faulty condition of the seams of coal therein, and in which case it had the right to surrender and abandon it, under the second inserted excerpt therefrom, supra; but such defensive pleading nowhere averred that sixty days' notice of such surrender was given to the lessors, or any one for them. Such failure, however, was sought to be avoided by the averment that the deceased lessor, for himself and wife, waived the required notice and accepted the surrender of the lease. It was also insisted by defendant that the lease was unilateral in its terms, and, being so, it was binding on neither party, and either of them might disavow it at any time.

Following pleadings made the issues and at the conclusion of plaintiffs' testimony, the court announced that it would sustain defendant's motion for a peremptory instruction in its favor; but it later abandoned that determination, and for some reason, not explained in the record nor in briefs of counsel, instructed the jury to find nominal damages for plaintiffs, and defined nominal damages as being ''any sum between one cent to five dollars.'' The jury thereupon returned a verdict in

plaintiffs' favor for the sum of $4, upon which judgment was rendered, and to reverse which plaintiffs prosecute this appeal, and defendant has procured in this court a cross-appeal, in which it complains of the action of the court in directing the return of nominal damages against it.

A brief reference is made in the argument of counsel for defendant to the effect that the action was brought by the heirs and one of the joint lessors instead of by the latter, and the personal representative of the deceased one, and in support of that argument it is merely suggested that the cause of action in so far as it affected the rights of such deceased lessor, was in his personal representative and not in his heirs. But, since one of the lessors who was a joint owner of the leased premises united with the other plaintiffs in bringing the action, and since neither a special nor a general demurrer was filed to the petition, we have concluded to not enter into a discussion of, nor to determine, that question, further than to say that in no event could it operate upon any part of the amount sought to be recovered, except half of the royalties that should have been earned, if any, between the time of abandoning the lease and the death of the joint lessor. Compare Gibson's Admr. v. Gibson, 241 Ky. 74, 43 S. W. (2d) 343. Even as to that item it is quite probable that the heirs of the deceased lessor, and the other joint one, could maintain the action to recover such half of the royalties between such dates, in the event the sum so recovered was not needed for the settlement of the estate of the deceased joint lessor. But for the reasons stated we will pursue the inquiry no further, and pass on to a consideration of the merits of the case.

The action of the court in first concluding to sustain the motion for a peremptory instruction in favor of defendant at the conclusion of plaintiffs' testimony, and its later change of mind to overrule that motion and to direct a verdict in favor of plaintiffs for only nominal damages, is, as we have said, not explained in the record. The testimony of plaintiffs sustained their contention that the lease was abandoned by defendant without right and contrary to its terms. It was also uncontradictedly proven by them that the coal under the leased premises was of a kind, quality, and thickness that would render it minable at a profit in accordance with the terms of the lease, and that there was more than 350,000 tons of

it in the leased tract. They furthermore proved that the suffering and permitting by defendant of the destruction of the entries under the Louisville Property Company land as a route to the coal under the Powers tract, thereby destroying such passway to the leased tract as an appurtenant thereto under the lease, resulted in a practical loss of all the coal under the leased premises, because of the fact that no substitute passway could be provided, except at such a high cost as to render it impractical and unavailable. None of that testimony was contradicted, since defendant introduced no witness, and in that situation we are unable to find from the record any justification for the court's action. It is attempted to be explained through the asserted unilateral character of the lease, as argued by counsel for the defendant, but they do not expressly say that the action of the court was based upon any such conclusion, and content themselves by making the contention in an effort to support the court's judgment.

In their argument to uphold the alleged unilateral character of the lease, the cases of Kentucky Coke Co. v. Smith, 207 Ky. 485, 269 S. W. 558; Daniel Boone Coal Co. v. Miller, 186 Ky. 561, 217 S. W. 666; and Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662, are cited and relied on. But a reading of the opinions in those cases will reveal a marked distinction between the facts of them and those of this one. The terms of the leases involved in those cases were couched in entirely different language, and the holdings therein are by no means controlling in the interpretation of the one here involved.

But, were it otherwise, then the facts of this case would relieve it from the application of the principles announced in the cited ones. The only language in the instant lease possessing any possible unilateral features is found in the first inserted excerpt, supra, from it, and which relates to the forging of the entries through the Louisville Property Company land to the Powers land, the coal under which is involved in this action. In that excerpt it is said: ''Provided, however, if the lessee should strike faulty or irregular coal in its entries on the Louisville Property Company land before reaching the leased premises, and if in the judgment of the lessee the entries cannot be driven into the property of the Lessor, then this instrument and lease shall be surrendered unto the lessor and be declared null and void

and by such surrender cancelling all contracts and stipulations made in this contract and agreement.''

But that language does not confer upon defendant the unqualified and arbitrary right to abandon and cancel the Powers lease, since the right to so abandon and cancel it is based upon the fact that faulty and irregular coal would be encountered in the extension of the entries under the Louisville Property Company land, and to such an extent as that their further projection would have to be abandoned by the lessee, which, if done, would necessarily destroy the only route or way that was within the contemplation of the parties through and by which the coal in the Powers land could be reached. Therefore the right to so abandon the lease, as given in the last-quoted language above, is not an arbitrary or a capricious one that may be exercised regardless of the conditions of the coal encountered in projecting the entries through the Louisville Property Company land. On the contrary, no such right of abandonment arises, unless natural conditions, as specified in the lease, are encountered. They were not so encountered, and the entries creating the passway to the Powers land were projected entirely through the Louisville Property Company land, and a large amount of coal was thereafter taken from under the Powers land by defendant in the exercise of its right under the involved lease.

In the circumstances, the portion of the lease containing such alleged unilateral features was fully performed and executed, after and following which they no longer operated upon the remaining obligations of the lease, but left them unaffected by any such alleged unilateral terms. If, therefore, the court was prompted to render the judgment it did upon the ground of any unilateral feature of the lease contract, it was clearly in error, even if it should be conceded that any such terms are contained in the contract, but which we conclude, as above pointed out, is untrue.

As hereinbefore intimated, we will not attempt in this opinion to outline or to point out the grounds, or measure of recovery possessed by plaintiffs under the testimony presented by the record before us, since that was not attempted to be done by the trial court; but we are clearly of the opinion that such uncontradicted testimony established violations of the terms of the lease by defendant entitling plaintiffs to recover the amount of legally recognized substantial damages flowing there-

from, and that the court erred in confining the recovery to only nominal damages.

Wherefore the judgment is reversed, with directions to sustain plaintiffs' motion for a new trial and to set it aside, and which necessarily destroys the judgment against defendant for the nominal sum of $4, thereby rendering it unnecessary to pass upon the merits of the cross-appeal.