[No. 25993. Department One. May 19, 1936.]

J. D. HARMS, INC., *Respondent*, v. ZORA E. MEADE, *Individually and as Executrix, Appellant.*[1]

*Allen, Froude & Hilen* and *Knickerbocker & Agee,* for appellant.

*Peyser & Bailey,* for respondent.

MITCHELL, J.—J. D. Harms, Inc. (hereinafter spoken of as Harms) obtained a contract with the United States government for the building of a road in Rainier National Park. He sublet a portion of the work by written subcontract with Zora E. Meade, individually

[1]Reported in 57 P. (2d) 1052.

and as executrix of the estate of John W. Meade, operating as Meade's Transfer and Garage (hereinafter spoken of as Mrs. Meade). In the subcontract, Harms is called the contractor, and Mrs. Meade is spoken of as the subcontractor. Certain provisions of the subcontract, material to this case, are as follows:

"WHEREAS, the contractor has entered into a contract dated October 31, 1932, with the United States of America, hereinafter referred to as the U. S., for the construction of a highway of approximately 2½ miles, . . . ; and

"WHEREAS, the sub-contractor is desirous of entering into an agreement with the contractor for hauling *all* excavated materials;

"Now, THEREFORE, in consideration of the mutual covenants of the respective parties, it is agreed as follows: . . .

"(2) *Duties of Sub-contractor:* The sub-contractor agrees to do *all* the hauling from the excavations on the above job; to furnish sufficient trucks on duty at all times to handle the work (each truck having a minimum capacity of 6 yards) ; to pay for all labor and insurance of all kinds as specified by the contractor, furnish proof to contractor of such payments, and to give a bond in the sum of $6,000 in terms and form to be approved by the attorneys for the contractor.

"(3) *Duties of Contractor:* The contractor agrees to pay the sub-contractor for actual yardage hauled, at the rate of 8c per cu. yd. free haul limit, and at the rate of ½c per station yard, in addition, for overhaul.

"(4) *Specific Supplies:* It is agreed that the contractor will buy gas, oil, grease, tires and tubes for use by the sub-contractor, the cost of which shall be deducted each month from the payments to be made by the contractor to the sub-contractor."

Both parties signed the contract and were acquainted with the location of the road.

Mrs. Meade commenced work under the contract, using trucks of the ordinary kind, until wet ground

was struck, then Linn and Dumptor trucks (crawling or caterpillar type) were used for a few days, and then again the common kind was used a few days until taken off permanently by Mrs. Meade, who refused to go on with her contract. Harms thereafter completed the hauling, using trucks of the common kind, except for a few days on which he used the caterpillar kind of trucks.

Afterwards, this suit was brought by Harms against Mrs. Meade on two causes of action: (1) For the balance due in the sum of $1,056, on account of supplies, etc., furnished Mrs. Meade; and (2) for breach of the contract to remove all excavated materials. Upon issues joined, the case was tried without a jury. Findings, conclusions and judgment were entered in favor of the plaintiff. Defendant has appealed.

The first assignment is that the court erred in holding the contract between the parties to be bilateral. The argument is that it was lacking in mutuality, and that, therefore, the appellant cannot be held in damages for refusal to perform it.

The written contract, upon mentioning the fact that Harms has a contract with the United States for the construction of the highway, recites that:

"Whereas, the sub-contractor [Mrs. Meade] is desirous of entering into an agreement with the contractor [Harms] *for hauling all excavated materials;*

"Now, Therefore, in consideration of the *mutual* covenants of the respective parties, . . ."

Mrs. Meade *agrees* to do all the hauling from the excavations on the job, to furnish sufficient trucks on duty at all times to handle the work, to pay all labor and insurance, and give a bond in the sum of six thousand dollars, etc., and, on the other side, Harms agrees to *pay* Mrs. Meade for the yardage hauled 8c per cu. yd., free haul limit, and at the rate of ½c per

station yard, in addition, for overhaul. Mrs. Meade gave to Harms, as she agreed, a subcontractor's bond, the amount of which was ascertained or fixed upon the basis of the total amount of all excavated materials to be hauled, as shown by the terms, estimates and profiles of the original contract with the United States.

Before and during the short period of time the appellant worked under the contract, the respondent, according to its promise in the contract, furnished a large quantity of supplies, etc., embraced in the first cause of action. Here was part performance on the part of each party to a contract specifically describing the total amount of work to be done.

But, independent of part performance, this contract, from the words employed, shows the intention of the parties. The subject matter is not in doubt, but clearly expressed. It is not the hauling of some or a part, but *all,* of the excavated materials in the construction of the highway, the plans, specifications and profiles of which the parties had before them in the government contract which was referred to in the contract between these parties. The contractor agreed to pay the specified amount for the yardage hauled, and Mrs. Meade agreed to do the hauling. It is a case of a written contract in which one party agrees to work and the other party agrees to pay—mutual covenants; a promise for a promise.

Appellant's contention is, as we understand it, that the contract should have contained an additional specific provision that "Harms agrees to deliver the excavated material to be hauled by Mrs. Meade," or words of similar import. How much plainer would that have made the contract? By undeniable implication, that is precisely what the contract means, taken altogether; so that, if resort need be had to this common method

of ascertaining the meaning of the contract, the result is the same.

In *McCartney v. Glassford,* 1 Wash. 579, 20 Pac. 423, Glassford agreed to freight certain produce to a certain point at so much per pound, and McCartney and others agreed to pay the freight charges at so much per pound. It was held that there was a corresponding obligation on the part of McCartney and others to furnish the produce for being carried, and that the contract was bilateral. In discussing this phase of the case, it was said:

"The real contention of the appellee, however, seems to be that the contract is wanting in mutuality, binding only the appellee to carry the freight, and not requiring appellant to furnish any; or, even if he is so required, that by the subsequent waiver of time, he is relieved from any time for performance. The rule that, if no time is fixed for the performance of an agreement otherwise regular, a reasonable time will be presumed to have been intended by the parties, we think settles the claim of want of time.

"The remaining question is whether appellant is equally bound by the contract set out above. It is evident that the consideration of appellee's assuming to carry said produce and incurring such liability was the implied promise of appellant to furnish it; and we believe the law will just as clearly and conclusively presume or imply such a promise on his part as if it had been set out in express words. To take any other view of a contract such as this would permit, in our judgment, a fraud and overreaching. There was a contract on the one part to carry, and on the other a contract to pay so much per pound; and there was from this just as clearly a corresponding and correlative obligation to furnish for carrying.

"In Sedgwick's Leading Cases on Damages, p. 382, is the case of *Black v. Woodrow,* 39 Md. 194, which seems to us decisive of this case, if the first objection herein made is not sufficient. It is there said: 'If the act to be done by the party binding himself can only

be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will be necessarily implied,' with numerous authorities commented on and reviewed, all leading to the conclusion at which we have arrived herein.''

The *McCartney v. Glassford* case has been cited and quoted from with approval by a number of later cases in other jurisdictions: *Ward v. McKinley,* 97 Ore. 45, 191 Pac. 322; *Jordan v. Indianapolis Water Co.,* 159 Ind. 337, 64 N. E. 680; *Stewart v. Herron,* 77 Ohio St. 130, 82 N. E. 956; *Ferguson v. Getzendaner,* 98 Tex. 310, 83 S. W. 374.

In the case of *Ward v. McKinley, supra,* the provision in the contract in question was:

'' 'The party of the second part agrees to pay the parties of the first part for all lumber that the parties of the first part ship on orders furnished by the party of the second part, as herein provided,' etc.''

It was held that the contract was not void for want of mutuality in failing to require defendants to order lumber, and in that connection the court quoted extensively from the case of *McCartney v. Glassford, supra,* to the same effect as the quotations from that case given in the present opinion.

The authorities relied on by the appellant are not in point, as we view them. First, the case of *Brewster District Unit v. Monroe,* 117 Wash. 21, 200 Pac. 841, is cited. That case involved a contract whereby one party agreed to warehouse and load fruit grown by the other party where the grower, by the terms of the contract, was not bound to deliver any quantity of fruit. It is stated in the opinion that:

''Appellants themselves, in analyzing the contract, put this query: 'What fruit was required to be de-

livered under the contract with appellants, the growers? What part?' and answered thereto, 'part or all'.''

Necessarily then, according to appellants' own understanding of the contract in that case, there was nothing to prevent the growers from making other contracts with other warehousemen. The contract was unilateral. But in the case at bar, Harms had no option, privilege or right to decline to deliver or to divide the quantity of materials to be hauled, but agreed to pay for hauling all of it.

The next case cited by appellant is *Mowbray Pearson Co. v. Stanton Co.*, 109 Wash. 601, 187 Pac. 370, 190 Pac. 330. Mowbray Pearson Company brought suit to recover in damages for breach of a contract with E. H. Stanton Company to deliver ice. The contract was one promising to sell ice at a certain price to the plaintiff, and to no other in that district, in consideration of the plaintiff's soliciting and delivering ice in that district. The plaintiff recovered judgment, which, on appeal, was reversed and the action ordered dismissed, the court saying:

"Turning to the writing under consideration, we can find in it no obligation assumed by the respondent. By its terms the appellant promised, in consideration of the respondent's soliciting and delivering ice within a certain described district, it would sell the respondent sufficient ice at a named price to supply the district, but the respondent promised nothing. It neither promised to solicit and deliver ice in the district, nor promised, in case it did do so, to buy the ice it should sell from the appellant. The writing itself is therefore wholly unilateral. The promise is entirely upon the one side without any corresponding promise on the other.''

The next case relied on by the appellant is *Osner & Mehlhorn v. Loewe*, 111 Wash. 550, 191 Pac. 746. It was a case in which Loewe alleged as a defense to a

suit on a promissory note the failure of the plaintiffs to comply with their promise to employ him to perform legal services for them. The opinion makes it plain that the so-called agreement relied on was an oral promise of future employment made at the time the note was given in consideration of money in the full amount expressed in the note. It was not claimed

" . . . that the oral agreement provided the note should or might be paid by services to be rendered, but only that appellant would be employed in the future."

It was further stated in the opinion:

"It is not claimed appellant Adolf Loewe was to give his time exclusively to the law work of the respondent, or that he obligated himself to do any law work for the respondent in the future. It was but a one-sided promise, revocable, or that might be ignored, at the pleasure of the promisor."

We think it is not necessary to discuss other authorities that have been cited by counsel on both sides.

The second assignment is that the court erred in holding that Mrs. Meade was obligated to do the hauling regardless of whether it could be done by the trucks she had. There were at times two or more wet places at the scene of operations, and at other places light snowfall for a short period of time, so that the hauling could not be reasonably done at such places and times, except by using trucks of the tractor kind, and the contention is that, as Mrs. Meade had no trucks of that kind, she had the right to permanently refuse to haul the excavated material; that is, that, according to the agreement, if she could not do the hauling with the trucks she already had, she was not obligated to do any hauling.

But the contract does not say that. Either upon consideration of the *purposes* for which the contract was entered into or by its *terms*, that contention is not

warranted. The purpose of the contract on the part of either or both of the parties was not to provide work for which Mrs. Meade's trucks were suitable so that they might be put to use, but that, by the joint action of the parties to the contract, material excavated should be hauled away. Harms was under contract with the United States to build a road, which involved the excavation and hauling of materials. Mrs. Meade, the subcontractor, was desirous of entering into an agreement with the contractor for hauling all excavated materials. She did enter into such an agreement, without qualification as to the means of hauling it.

Now, as to the terms of the contract in this respect: As we understand the proof, Mrs. Meade did not know whether she had trucks enough to handle the hauling, even with good luck all of the time, but she thought that she could get others as and when needed, and so stated to the respondent. But that was all a matter of detail and her own responsibility. It was not provided that she should furnish sufficient trucks of the kind she then had, the non-tractor type, on duty at all times to handle the work. Had that been intended, it could easily have been expressed in the contract. The contract simply provided that she shall "furnish sufficient trucks on duty at all times to handle the work (each truck having a minimum capacity of 6 yards)," an agreement wholly unqualified except as to the minimum capacity of each truck, which detail was manifestly intended as a suggestion in coordinating the work of excavating the material with that of hauling it.

Such matters of detail, for the purpose of performance, do not go to, nor enter into, the essence of the subject matter of the contract, unless so stated. Courts cannot set aside contracts because the performance of them becomes more difficult or more expensive than

when they were entered into. *Brown v. Ehlinger,* 90 Wash. 585, 156 Pac. 544.

Again, as said in *Adams v. Washington Brick etc. Co.,* 38 Wash. 243, 80 Pac. 446:

"In construing the language of a written contract, that construction should be accorded which is most in consonance with the paramount purpose of the parties at the time of executing the same. It will be assumed that the parties had a purpose in entering into the contract. If the language is susceptible of two or more constructions, it should be given that which would best adapt the agreement to facilitate the accomplishment of the ends evidently sought to be attained."

These views and the findings, conclusions and judgment of the trial court are in agreement.

Affirmed.

MILLARD, C. J., TOLMAN, STEINERT, and GERAGHTY, JJ., concur.