## Jackson v. Pepper Gasoline Co.

Oct. 31, 1939.

W. Duncan Hamilton, Benton & Davis and D. L. Pendleton for appellant.

E. L. McDonald for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Paul Jackson, brought this action to cancel a lease executed by him August 19, 1937, by the terms of which he leased to the Pepper Gasoline Company for a term of five years, beginning July 1. 1937, a lot located on the northwest corner of Main and Rose Hill Streets in Versailles, Kentucky, the premises "to be used as an automobile filling and service station." Located on the lot and included in the lease was a service station building and an air compressor. The lessee agreed to pay as rent "an amount equal to one cent per gallon on each gallon of gasoline delivered to said station, payable monthly on the tenth day of each month for the preceding month." The lessee was given the right at any time during the term and within a rea-

sonable time thereafter to remove from the leased premises all structures, pumps, tanks, machinery, equipment and other property at any time placed thereon. The lease contained this clause:

"Should Lessee default in the payments of rentals hereunder, or in respect of any other covenant herein, and should such default continue for fifteen (15) days after notice in writing by Lessor to it of such default, Lessor may terminate this lease and take possession of said premises."

On the same day the lease was executed the Pepper Gasoline Company leased the same premises back to appellant for the same rental; that is, a sum equal to one cent per gallon on each gallon of gasoline delivered. It appears that the company had installed certain equipment on the premises, including two Tokheim metal pumps, one Tokheim metal computing pump, five 1,000 gallon tanks, lubsters and signs, which was included in the lease by the company back to Jackson. This lease contained a provision that either party might cancel and terminate it on ten days' notice to the other party. The parties operated under this lease for several months and until the Pepper Gasoline Company exercised its right to terminate same. Jackson refused to surrender possession of the premises, and on September 23, 1938, the Pepper Gasoline Company had issued a warrant of forcible detainer. The jury in the county court found the defendant "not guilty," and the plaintiff in that proceeding filed a traverse. In the circuit court the defendant, Jackson, was adjudged guilty of forcible detainer, and that judgment was affirmed by this court. Jackson v. Pepper Gasoline Company, 276 Ky. 302, 124 S. W. (2d) 93. Jackson then brought this action to cancel the first lease on the ground that it is a unilateral contract and lacks mutuality. The circuit court reached the conclusion that the lease from appellant to appellee was not unilateral but enforceable, and sustained a demurrer to the petition. Appellant declined to plead further, and judgment was rendered dismissing his petition.

It is appellant's contention that the lease is lacking in mutuality and therefore unenforceable because (1) the amount of rentals payable to the lessor was left entirely to the control of the lessee, since there is no obligation on its part to deliver gasoline in any fixed

amount, and (2) the provision in the lease, giving to the lessee the right at any time during the term and within a reasonable time thereafter to remove from the premises all of its structures, pumps, tanks, machinery, equipment, and other property at any time placed thereon, enables the lessee during the term to cease operating the filling station, and, consequently, paying rentals without any reciprocal rights in the lessor.

In the opinions of this and other courts there is frequently a misuse of legal terminology in the discussion of unilateral contracts and mutuality. It is sometimes said that a contract is unenforceable because it is unilateral or lacks mutuality when what is meant is that it is unenforceable because of want of consideration. Union Gas & Oil Company v. Wiedeman Oil Company, 211 Ky. 361, 277 S. W. 323. The term "unilateral contract," used to designate a promise for which no consideration was requested or given, is a misnomer. Unilateral contracts have long been recognized by the law. In the Restatement of Contracts, the unilateral contract is defined as "one in which no promissor receives a promise as consideration for his promise," and the bilateral contract as "one in which there are mutual promises between two parties to the contract; each party being both a promissor and a promissee." Restatement of Contracts, Section 12. The lease from appellant to appellee is a bilateral contract, since there are mutual promises between the two parties to the lease. In return for the lease of the lot and the buildings and equipment thereon for a term of five years, the appellee promised to use the premises as an automobile filling and service station and to pay as rent "an amount equal to one cent per gallon on each gallon of gasoline delivered to said station, payable monthly on the tenth day of each month for the preceding month." There is both benefit to the promissor and detriment to the promisee. The promissor receives rent and the promisee agrees to use the premises as a gasoline filling and service station, and, consequently, to install the necessary equipment required for such operation and to pay rent measured by the amount of gasoline delivered to the station. The problem presented is not a question of mutuality of obligations, but is whether the promise to pay rent is too indefinite to constitute a binding obligation. We think the lease sufficiently specifies the rent to be paid, and prescribes a proper measure for definitely deter-

mining its amount. In Williston on Contracts, Volume 1, Section 37, the author says:

> "A lack of definiteness in an agreement may concern the time of performance, the price to be paid, work to be done, property to be transferred, or miscellaneous stipulations in the agreement. Especially a reservation to either party of a future untrammelled right to determine the nature of the performance, or a provision that some matter shall be settled by future agreement, has often caused a promise to be too indefinite for enforcement. The principle governing all such cases is the same however, and the classification is merely for convenience. In interpreting doubtful agreements a court will, if possible, attach a sufficiently definite meaning to a bargain of parties who evidently intended to enter into a binding contract and ambiguous words in an obligation should be interpreted most strongly against the party who used them."

In Section 41 of the same volume it is said:

> "If a promise indefinite as to price is capable of being made certain by an objective standard as, for example, extrinsic facts, it is enforceable."

In the lease before us the lessee is not given the untrammelled right to determine the nature of the performance and, consequently, the amount of rent to be paid though appellant so contends. The parties evidently intended to enter into a binding contract. Under a fair construction of the lease, the appellee agreed to operate a gasoline filling and service station on the leased premises and to have delivered at the station an amount of gasoline sufficient to supply the needs of its customers. The contract had been partly executed. The filling station had been operated more than a year when this action was brought, properly and in good faith so far as this record discloses, and what may have been uncertain has been made certain and definite since the average monthly deliveries of gasoline to the station when operated in good faith has been determined. The fact that appellant was the sublessee during the major part of that time does not alter the situation. The lease contemplated full compliance with its terms on the part of both the lessor and the lessee, and neither party could abandon it at his option. This construction of the lease is fortified by the provision giving to the lessor the right to

terminate it and take possession of the premises if the lessee should default in the payment of the rentals, or any other covenant contained in the lease, and such default continue for a period of fifteen days. It is argued that the provision of the lease giving to the lessee the right at any time during the term and within a reasonable time thereafter to remove from the leased premises all structures, machinery, and equipment at any time placed thereon gives to the lessee the right to abandon the contract at any time, but we do not so construe it. This is a customary provision in leases, and the right to remove machinery and other property during the term means only the right to remove property no longer needed in the operation of the business or for the purpose of substituting other equipment. It clearly does not contemplate the removal of all property for the purpose of terminating the contract.

Appellant cites a number of cases in support of his contention that the contract lacks mutuality and is unenforceable, of which Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662, and Daniel Boone Coal Company v. Miller, 186 Ky. 561, 217 S. W. 666, are examples. In the cases cited, the contracts were wholly executory and in each instance one of the parties was given the absolute right to terminate the contract at any time. As heretofore pointed out, the sole question here is whether or not the provision for the payment of rent is sufficiently definite to be enforced. It is a generally recognized rule that the amount of rent due under a lease need not be ascertained at the time of the lease provided it can be ascertained before the time of payment, and it may be measured and determined by the amount of income derived from the leased premises. Tiffany on Landlord and Tenant, Volume 1, Section 173. In Lee v. Pearson, La. App., 143 So. 516, 518, a building used as a garage and gasoline filling station was leased by Pearson to the Louisiana Oil Refining Company for the term of one year. The rent stipulated in the contract was an amount equivalent to one cent for each gallon of gasoline and other motor fuel sold during the month at the leased premises by the lessee. It was argued that the price was not certain and definite, but the court said:

"A price of one cent per gallon on all gasoline delivered during a certain month appears to us to be as definite, if not more so than a royalty on sand and gravel that is removed from a pit, and it can

certainly be used as a basis on which to accurately determine the total amount of rent that becomes due for that month, and fixes the price with sufficient certainty to support a contract of lease."

Similar provisions in contracts of lease have been tacitly approved by this court. Cities Service Oil Company v. Taylor, 242 Ky. 157, 45 S. W. (2d) 1039, 79 A. L. R. 1374; Paducah Home Oil Company v. Paxton, 222 Ky. 778, 2 S. W. (2d) 650, 56 A. L. R. 797. In cases of this kind the law invokes the standard of reasonableness and good faith.

We think the contract of lease between appellant and appellee requires appellee to operate a filling station on the leased premises for a term of five years and to deliver the necessary gasoline to the station to take care of the business, and that the lease is binding on both parties.

The judgment is affirmed.

The whole Court sitting, except Judge Cammack.