[No. 31893. Department Two. May 15, 1952.]

WALTER REEKER et al., Respondents, v. CLAUD R. REMOUR et al., Appellants.[1]

*Brodie, Brodie & Fristoe,* for appellants.

*Cunningham & Ries,* for respondents.

HILL, J.—The question presented is whether or not there is a valid consideration for a service station lease. The plaintiffs, Walter Reeker and wife (respondents here), had conveyed certain property to the defendants, Claud R. Remour and wife (appellants here), and by this action seek to have the deed reformed by making it subject to a service station

[1]Reported in 244 P. (2d) 270.

lease from the Remours to the Reekers. The parties are agreed that the deed was intended to be subject to the lease and that it should be reformed if the lease is valid and binding upon the parties. The trial court, by the judgment appealed from, directed the reformation of the deed.

Throughout the lease with which we are here concerned, the parties, though in each instance husband and wife, are referred to as "lessor" and "lessee," and we will adopt those terms.

The lessor let and demised to the lessee certain property for a ten-year period (with a right of renewal for five years), the lessee agreeing to pay a rental of one cent for each gallon of gasoline sold at retail through the service station. The lease states:

"It is hereby stipulated that the primary purpose of this lease is to enable Lessee to use the demised premises for the dispensing of petroleum products and for the conduct of a super service station business thereon."

It is the appellants' contention that there is a failure of consideration in that the lessee does not "bind himself to sell gasoline or to do any other act, pay anything, or give up anything that might be deemed a consideration."

This is not a wholly executory lease; the parties, in fact, placed their own interpretations upon its terms. They entered into a sublease, with the Reekers as sublessor and the Remours as sublessee, the sublease being expressly "subject to the limitations of and dependent upon continuance in existence" of the lease the validity of which is now in question. Mr. Remour testified that he had received rent from Mr. Reeker for a period of almost two years, in accordance with the terms of the lease. We have here a situation in which the lessee is paying rent in accordance with the terms of the lease and the lessor, although accepting the rent, says that the lease is invalid because the lessee is not obligated to operate a service station on the property unless he wants to.

We direct attention to provisions of the lease that are patently inconsistent with appellant's position, being the terms and conditions on which the lease might be termi-

nated: (a) The lessee is given the option of terminating the lease on thirty days' written notice in the event of the condemnation of the premises or any part thereof,

". . . or in the event the full use of said premises or any portion thereof in the conduct of a super service station business is interfered with or handicapped by any law, ordinance, or rule or regulation of any governmental officer or body";

(b) the lessee is given the option of terminating the lease on thirty days' written notice if the leased premises cease to be advantageous for the dispensing of petroleum products, in which event the lessor is to be paid an amount equal to that received by the lessor for the calendar month next preceding the month of termination; (c) in the event the improvements or equipment belonging to the lessor are destroyed or damaged, he is to restore or repair them, and if he fails to commence such restoration or repair promptly and to prosecute it diligently to completion, the lessee may at his option carry on such work and withhold rentals until he has been reimbursed, or in the alternative may cancel the lease; (d) in the event of any default in any of the terms and conditions of the lease by the lessee and a failure to remedy the default within thirty days after written notice thereof, the lessor may re-enter the premises and retake possession and terminate the lease.

The lease as a whole indicates that the parties intended to enter into a mutually binding contract which either might terminate under certain conditions set forth in the lease. The import of the contract is one of "an intention of continuity of the business." See *National Refining Co. v. Cox,* 227 Mo. App. 778, 57 S. W. (2d) 778 (1933).

Other courts, confronted with a similar problem under substantially similar service station leases, have concluded that there was a consideration for the lease because the lessee was under an implied obligation to conduct a service station business on the leased premises. In *Jackson v. Pepper Gasoline Co.,* 280 Ky. 226, 133 S. W. (2d) 91, 126 A. L. R. 1370 (1939), there was a five-year lease of property " 'to be used as an automobile filling and service station.' " The rent

was to be " 'an amount equal to one cent per gallon on each gallon of gasoline delivered to said station.' " It was there contended that the lease should be cancelled because "the amount of rentals payable to the lessor was left entirely to the control of the lessee," there being no obligation on its part to have gasoline delivered to the station. The Kentucky court of appeals affirmed a judgment refusing to cancel the lease, and held that under a fair construction of the lease the lessee agreed to operate a filling station on the premises and to have delivered to the station an amount of gasoline sufficient to supply the needs of its customers. The court also pointed out that, the contract having been partly executed (the filling station having been operated for more than a year under the lease), average monthly deliveries could be determined and damages for a breach of the lease could be established with certainty.

In *National Refining Co. v. Cox, supra,* Cox had leased his service station property to the National Refining Company for one year, the rental to be a cent a gallon on all gasoline sold at the service station. The lease provided that the premises " 'be used as a gasoline filling and automobile service station,' " but the lessee was not expressly required to supply gasoline to or to sell gasoline on the premises. In the litigation Cox contended that the lease was invalid in that

" . . . it was left to the 'wish or will of plaintiff [company] whether the premises shall be made a going concern or whether it will deliver any gasoline to the premises.' "

The court's answer was:

"We think there is no merit in this contention. While the lease does not, in express terms, provide that plaintiff should conduct a filling station on the premises, or should deliver such a quantity of gasoline, oil and other petroleum products to the station as would be necessary to meet the trade thereat, such obligation on the part of the plaintiff must be implied from the terms of the lease. The lease provides that the station shall be used as a gasoline filling and automobile service station. It also provides that, in the event the necessary legal permission to operate the business as the station could not be obtained, or if obtained it should be subse-

quently revoked, or for any other reason it should become illegal for lessee to conduct said business upon said premises, etc., plaintiff might terminate the lease. Section 8 provides in the event of fire, if the lessor did not repair the lessee should do it. This clause indicates an intention of continuity of the business."

In the opinion in that case, the court quoted the following from *Lewis v. Atlas Mut. Life Ins. Co.,* 61 Mo. 534, 538 (1876):

" 'It very frequently happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied.' "

In *Wright v. Fuel Oil Co.,* 342 Mo. 173, 114 S. W. (2d) 959 (1938), the supreme court of Missouri approved but did not apply the rule laid down in *National Refining Co. v. Cox, supra.* For still more recent approval, see *Boland v. Shell Oil Co.,* 71 F. Supp. 649 (1947); see, also, *Seggebruch v. Stosor,* 309 Ill. App. 385, 33 N. E. (2d) 159 (1941).

We have not heretofore had a case involving a service station lease; however, the early case of *McCartney v. Glassford,* 1 Wash. 579, 20 Pac. 423 (1889), is in point. (The first volume of Washington Reports, pages 487 to 615, contains cases decided by the territorial supreme court at the January term, 1889, and the *McCartney* case is one of them.) This case is quoted approvingly and at length in *Harms, Inc. v. Meade,* 186 Wash. 287, 57 P. (2d) 1052 (1936), and it is commented therein that it had also been cited and quoted with approval by the Oregon, Indiana, Ohio and Texas courts.

In the *McCartney* case, we said:

"There was a contract on the one part to carry [100 tons of freight from Spokane Falls to the Little Dalles], and on the other a contract to pay so much per pound [1-½ cents]; and there was from this just as clearly a corresponding and correlative obligation to furnish for carrying."

We met the contention that there was a lack of mutuality because the carrier was bound but the shipper was not obligated to deliver freight to the carrier, by saying:

"The remaining question is whether appellant is equally bound by the contract set out above. It is evident that the consideration of appellee's assuming to carry said produce and incurring such liability was the implied promise of appellant to furnish it; and we believe the law will just as clearly and conclusively presume or imply such a promise on his part as if it had been set out in express words. To take any other view of a contract such as this would permit, in our judgment, a fraud and overreaching."

 We are of the opinion that, by the terms of the lease now before the court, when the Remours leased the premises to the Reekers to enable them "to use the demised premises for the dispensing of petroleum products and for the conduct of a super service station business thereon," for a rental of one cent a gallon on all gasoline "sold at retail through the service station," there arose by necessary implication a correlative obligation on the part of the Reekers to operate a service station on the premises. As stated in *Stusser v. Gottstein,* 178 Wash. 360, 367, 35 P. (2d) 5 (1934): "Necessary implication is as much a part of an instrument as though that which is so implied were plainly expressed."

There is, then, a consideration for the lease because there is mutuality of obligation, and that distinguishes the two Washington cases upon which appellants rely, namely, *Brown v. Brew,* 99 Wash. 560, 169 Pac. 992 (1918), and *Mowbray Pearson Co. v. E. H. Stanton Co.,* 109 Wash. 601, 187 Pac. 370, 190 Pac. 330 (1920). As pointed out in the former:

"Mutuality of obligation is not essential to a contract when there is other valid consideration, as unilateral contracts, based upon a sufficient consideration, are enforcible; but where, as in this case, there is no other consideration but the promise, there must be mutuality to make a binding contract."

As previously indicated, the parties are agreed that if the lease from the Remours to the Reekers is valid—and we

hold it is—then the deed from the Reekers to the Remours should be corrected to show that it is subject to that lease. The judgment of the trial court directing that correction is affirmed.

SCHWELLENBACH, C. J., HAMLEY, FINLEY, and OLSON, JJ., concur.