**Gilbert HALE et al., Appellants,**

**v.**

**CUNDARI GAS TRANSMISSION COMPANY, Appellees.**

Court of Appeals of Kentucky.

Feb. 27, 1970.

Louis Cox, William P. Curlin, Jr., Hazelrigg & Cox, Frankfort, Lew W. Harpold, Hofheinz & James, Houston, Tex., John M. Lyttle, Manchester, for appellants.

E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, for appellees.

CLAY, Commissioner.

This suit was brought by appellee (hereinafter Cundari) to compel the performance of a written "Gas Purchase Agreement" entered into with appellants Hale and Hart (hereinafter sellers) in January 1967. The Chancellor granted the injunctive relief sought and the only question presented here (which was presented below) is whether this contract is so lacking in "mutuality" and so ambiguous as to be unenforceable.

Sellers held two oil and gas leases on property which had three producing gas wells. Cundari had constructed a pipe line for the transmission of gas in the area, and at the time of the execution of the agreement had only one outlet for the sale of gas which it was transporting. The buyer from Cundari was obligated to take only whatever it might need during the six winter months. When the contract was entered into, the sellers had gas to sell and Cundari had a transmission system and a limited market for the gas it could acquire and transport. The basic agreement was that the sellers agreed to sell "all the natural gas that may hereafter be produced" from the leased tracts and Cundari agreed to buy such gas on the terms and conditions specified in the agreement. It provided (among other things):

"It is distinctly understood and agreed that Buyer (Cundari) shall only be required to take Seller's gas during such

months of each year *as a market therefor is available* and that at all times when the supply of gas produced or controlled under contract by the Buyer shall be in excess of the market that can be found therefor, a pro-rata share only shall be taken of Seller's production, and that in fixing the pro-rata share the Seller shall not be discriminated against in favor of gas produced by Buyer or then held under contract of purchase from other sellers in the vicinity of Seller's leases.

"Seller shall not use any artificial means to deliver said gas into the line of Buyer, without the written consent of Buyer, and Seller agrees not to sell or otherwise dispose of any of the gas produced from the well or wells covered by this agreement, to any other person or persons, firm or firms, corporation or corporations, except for drilling and operating of wells of Seller in the vicinity of the within described land and excepting, also such free gas privileges as may be set forth in the above described original leases."

"For the gas so furnished, supplied and delivered into the pipe line of Buyer, at the point as above described, by seller, the Buyer agrees and binds itself to pay unto Seller during the six winter months of November 1st through April 30th, inclusive, each year at the rate of 20¢ per thousand cubic feet.

"No other sales unless negotiated between the parties hereto."

"This agreement shall continue in force and be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns, from the date hereof and *so long thereafter as Buyer finds it profitable* to maintain its transportation system and measuring station or stations in connection with Seller's production." (Emphasis added)

One of the obligations of Cundari was to extend its pipe line to within 50 feet of the sellers' wells and there locate and install a measuring station or stations. The parties operated under this contract from the date of its execution in January 1967 until October 21, 1968, when the sellers' wells were purchased by appellant Republic Mineral Corporation (which is bound by this agreement to the same extent as were the original sellers). Claiming that Cundari had breached the agreement and that it was voidable, Republic disconnected the wells, which brought on this lawsuit. The issue of a breach by Cundari was raised in the trial court but the Chancellor found adversely to appellants, and that question is not before us on the appeal. The issue here is whether the contract was enforceable by Cundari or whether it constituted only a continuing offer of sale subject to termination by either party at any time.

Appellants' basic argument is that, because the sellers were not required to produce any gas and Cundari was not bound to take any gas, the purported agreement was "unilateral, void of mutuality, and so ambiguous as to be incapable of enforcement". Cundari contends these defenses are not before us because of appellants' failure to plead them but they were presented to the Chancellor and he passed on them in his judgment. See CR 15.02.

We will first examine appellants' contention that the agreement was "unilateral" and "void of mutuality". The use of this terminology is not very helpful in solving the problem presented. In Jackson v. Pepper Gasoline Co., 280 Ky. 226, 133 S.W.2d 91, 126 A.L.R. 1370 (1939), which involved the identical questions we have here, it was observed (page 93 of 133 S.W.2d):

"In the opinions of this and other courts there is frequently a misuse of legal terminology in the discussion of unilateral contracts and mutuality. It is sometimes said that a contract is unenforceable because it is unilateral or lacks mutuality when what is meant is that it is unenforceable because of want of consideration."

A "unilateral" contract is just as valid as any other kind provided it is founded on legal consideration. Corbin on Contracts, Vol. 1A, section 152 (pages 2 and 5); Union Gas & Oil Co. v. Wiedemann Oil Co., 211 Ky. 361, 277 S.W. 323 (1925); Jackson case above cited. With respect to "mutuality", though it is often said that "mutuality of obligation" is essential to the validity of an executory contract, this is not necessarily so, and here again the problem is one of consideration. Corbin on Contracts, Vol. 1A, section 152 (pages 2 and 6); Jackson case above cited; Meurer Steel Barrel Co. v. Martin, C. C.A.3d, 1 F.2d 687 (1924). Appellants' principal argument is in substance that the contract lacked reciprocal considerations.

They insist that Baber v. Lay, Ky., 305 S.W.2d 912 (1957), involved the same type of agreement and is controlling. In that case the sellers had agreed to deliver to the buyers all of the coal mined from a particular mine in Pike County. The buyers agreed to accept all coal "which their equipment will permit them to process at the best advantage * * * and which market conditions will permit them to handle". It was held that this contract was unenforceable for want of "mutuality of obligation". The opinion points out that (1) the sellers were not obligated to mine any coal, and (2) the buyers had not obligated themselves to take any certain amount. Therefore neither party furnished legal consideration to the other. (Perhaps the same conclusion could have been reached on the ground that the parties' obligations were too indefinite to be enforceable.)

The situation here involves distinguishing features. With respect to the obligation of the sellers, at the time the agreement was entered into, their three wells were *then producing* and the parties obviously contemplated that the rock pressure would insure future production. This is somewhat different from the prospective mining of coal.[1] In effect, the sellers agreed to *continue* normal production, particularly since the objective of the contract was to market the gas on the leaseholds, and *all* of the production was committed to Cundari. We believe the contract fairly must be construed to have imposed on the sellers a sufficiently definite obligation to constitute consideration for Cundari's part of the bargain.

Jackson v. Pepper Gasoline Co., 280 Ky. 226, 133 S.W.2d 91, 126 A.L.R. 1370 (1939), heretofore cited, is pertinent on this point. Therein the lessor brought suit to cancel a lease on the grounds that it was "unilateral" and "lacks mutuality". The term was for five years. The lease provided the premises were to be used as an automobile filling and service station. The lessee agreed to pay as rent one cent per gallon on each gallon of gasoline "delivered to said station". The lessor's contention was that since the lessee was not required to deliver any gasoline to the station, it was not obligated to pay any rent. The court construed the lease as imposing on the lessee an obligation to operate the filling station and to have delivered to it sufficient gasoline to supply the needs of its customers. Observing that the parties intended to enter into a binding contract and that the court should, if possible, attach a definite meaning to the bargain of the parties, it was held the ascertainable obligation of the lessee constituted consideration for the lessor's promise. We conclude the sellers' commitment in the present case was of that character.

Appellants' principal argument, however, is that Cundari did not furnish sufficiently adequate and certain consideration for their obligation. Even if the sellers were bound to perform, the contract would be unenforceable if (1) it was executory, and

1. The contract expressly applies to any and all wells that "may hereafter be drilled" on the leased tracts. Whether that phase of the contract presents an un- enforceable feature under the principle of the Baber case we do not decide, since we are deciding the other obligations in the agreement are sufficient to support it.

(2) the buyer Cundari was not obligated to do anything or had the absolute right to terminate it. Berry v. Frisbie, 120 Ky. 337, 86 S.W. 558 (1905); Springton Coal Co. v. Bowling, 228 Ky. 317, 14 S.W.2d 1082 (1929). In Fowler's Bootery v. Selby Shoe Co., 273 Ky. 670, 117 S.W.2d 931, 932 (1938), it was observed that:

"* * * if *either* party is not bound because of lack of mutuality neither is bound." (Emphasis added)

Of course consideration furnished by Cundari could consist either of benefit to the sellers or detriment to it. Campbell v. Campbell, Ky., 377 S.W.2d 93 (1964). We find both elements here exist. As heretofore noted, Cundari promised to extend its pipe line to within 50 feet of the sellers' wells and there install measuring stations. Not only did it make this specific promise but it actually executed this part of the bargain at a cost of $80,000. The promise and the performance were both beneficial to the sellers and constituted legal detriment to Cundari. This is another feature which makes the case of Baber v. Lay, Ky., 305 S.W.2d 912 (1957), distinguishable.

■ It is not required that parties to a contract have reciprocal rights of the same kind or nature. David Roth's Sons, Inc. v. Wright and Taylor, Inc., Ky., 343 S.W.2d 389 (1961). Thus an *option* to buy certain goods is an enforceable contract if the party with the option has furnished *consideration other than a promise to buy* for the sellers' agreement to sell. Corbin on Contracts, Vol. 1A, section 266 (page 542); Pace Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340 (1955).

In Paragon Oil Co. v. A. B. Hughes & Sons, 193 Ky. 532, 236 S.W. 963 (1922), the agreement was that if the plaintiff placed two drills on a certain leased tract, the defendant would give the plaintiff "12 wells to drill". The defendant argued the contract lacked "mutuality" because the plaintiff did not obligate himself to drill any wells. It was held that the placing of the two drills on the leased property was the *executed consideration* for the promise to give the plaintiff the right to drill 12 wells, and therefore the contract was enforceable.

■ It is clear therefore that Cundari under the contract had obligated itself, and executed the obligation, to make substantial and expensive installations in order to create a market for the sellers' gas. This was adequate consideration for the sellers' obligations to continue production and to sell the gas to Cundari.

Although our foregoing conclusions confirm the Chancellor's determination that this agreement was enforceable against appellants, there is another phase of this controversy upon which we consider it proper to comment. Appellants take the position that Cundari's *executory* obligations constituted the only consideration furnished the sellers and they are so ambiguous and uncertain as to release appellants from performance. Since we have found other consideration, additional specific promissory undertakings by Cundari were not necessary to give it a right to enforce the agreement against appellants.

■ We do not believe, however, that Cundari's continuing obligations under this contract are illusory. While we are only indirectly confronted with the problem, it cannot be said that Cundari has an absolute right to terminate this agreement in its discretion under the principles considered in Steinwender-Stoffregen Coffee Co. v. F. T. Guenther Grocery Co., 80 S.W. 1170, 26 Ky.Law Rep. 270 (1904); Killebrew v. Murray, 151 Ky. 345, 151 S.W. 662 (1912); Daniel Boone Coal Co. v. Miller, 186 Ky. 561, 217 S.W. 666 (1920); Cockrell v. Premium Coal Co., Ky., 342 S.W.2d 679 (1961).

It is unnecessary to examine in detail Cundari's obligations because this lawsuit does not involve their enforcement. Suffice it to say that, invoking the standards of reasonableness and good faith, the con-

tract imposes on Cundari sufficiently definite obligations which it cannot arbitrarily repudiate. Thus the agreement is not void for uncertainty. See Jackson v. Pepper Gasoline Co., 280 Ky. 226, 133 S.W.2d 91, 126 A.L.R. 1370 (1939); Oliver v. Wyatt, Ky., 418 S.W.2d 403 (1967); Lanford, etc. v. United States Wooden-Ware Co., 127 Mich. 614, 86 N.W. 1033 (1901); Edgar v. Hewett Grain & Provision Co. of Escanaba, 230 Mich. 168, 202 N.W. 972 (1925); Petroleum Refractionating Corp. v. Kendrick Oil Co., C.C.A.10, 65 F.2d 997 (1933).

The judgment is affirmed.

HILL, C. J., and MILLIKEN, NEIKIRK, OSBORNE, PALMORE and REED, JJ., concur.