51 F.3d 266
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re: JBL CONSTRUCTION COMPANY, INCORPORATED, Debtor.
COLUMBIA GAS OF OHIO, INCORPORATED; Columbia Gas of
Kentucky, Incorporated, Plaintiffs-Appellees,
v.
JBL CONSTRUCTION COMPANY, INCORPORATED, Defendant-Appellant.
 No. 93-2473.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1994.
Decided March 27, 1995.
 
 ARGUED: James William St. Clair, St. Clair & Levine, Huntington, WV, for appellant. James Richard Berendsen, Columbus, OH, for appellees.
 Before RUSSELL, WILKINS and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This case involves a contract dispute that arises from JBL Construction Co.'s bankruptcy proceedings. The issue is whether JBL Construction Co. ("JBL"), under its contracts with the plaintiff gas companies, had an obligation to provide all of the construction work assigned to it by the gas companies even though the contracts did not expressly require the gas companies to assign construction work exclusively to JBL. Although the bankruptcy court did not enforce the contracts because they lacked an express exclusivity provision, the district court implied the missing term from the history of dealings between the parties. However, we hold that the district court could not have implied an exclusivity provision based on the limited factual record before it. We vacate and remand.
 
 I.
 
 2
 Columbia Gas of Ohio, Inc. and Columbia Gas of Kentucky, Inc. (collectively, "Columbia") are natural gas distribution companies that sell and transport natural gas to consumers. Columbia routinely hires contractors to install and maintain its underground pipeline system. JBL, the defendant below, was one of the contractors that Columbia used over the course of 26 years.
 
 
 3
 In January 1990, Columbia solicited bids on its pipeline construction and maintenance work for the 1990 construction season. When Columbia solicits bids and awards contracts, neither Columbia nor the bidders know exactly how much work will be required under the contracts. Although Columbia knows that it will need to provide its customers with installation and maintenance service during the year, it does not know the number of new customers it will have to service until later in the construction season. When contractors submit bids, they base their prices on the expectation that they will receive a certain volume of work. The actual volume of work performed in the previous year serves as a baseline. However, Columbia pays contractors only for the work actually performed during the contract year.
 
 
 4
 JBL was the lowest bidder on five contracts for the 1990 construction year. Each contract required JBL to perform pipeline construction and maintenance work in a specific geographic area of Ohio or Kentucky for a period of one year, beginning in March or April of 1990. Under each contract, JBL agreed to perform the work specified in the attached bid sheets for the various prices stated on those sheets. Neither the contracts nor the bid sheets specified the amount of work to be performed, because Columbia could not know at the time of contracting how much work it would require during the contract year. The contracts did not expressly provide that JBL had an exclusive right to perform all the work required in the contract territory during the contract year.
 
 
 5
 Columbia explained at a meeting with potential bidders on its contracts that three types of work fall outside the scope of each contract. First, Columbia retains the right to perform some or all of the work with its own crews. Columbia explained, however, that its crews cannot handle more than approximately ten percent of the total work. Second, large construction jobs in excess of $100,000 fall outside the contracts and are bid out separately. Third, in exceptional circumstances and situations, such as a stream crossing or a highway crossing, the contractor does not have to perform the work at the bid prices. This final provision protects the contractor from suffering huge losses in unusual situations where unforeseen circumstances increase the cost of performance.
 
 
 6
 JBL initially performed all of the work assigned to it under each of the five contracts. On August 22, 1990, however, JBL notified Columbia that it would cease all operations on September 7, 1990.
 
 
 7
 JBL filed for bankruptcy soon thereafter. JBL completed all work that Columbia had already assigned to it but did not complete the work for the remainder of the contracts' duration. Columbia entered into new contracts with several other contractors to finish the work JBL did not perform.
 
 
 8
 Upon discontinuance of work, the contracts between Columbia and JBL provided that if Columbia takes over and completes the work (or awards it to another contractor) at a higher cost than what JBL would have charged based on the unit prices under the contracts, then Columbia may collect the excess costs from JBL. Columbia calculated that the amount charged by the replacement contractors exceeded the amount that JBL would have charged under its contracts by $207,619.47.
 
 
 9
 After abandoning the contracts and filing for bankruptcy, JBL requested that Columbia pay for work that JBL had completed in the amount of $327,563.08. Columbia set off damages in the amount of $207,619.47 and paid JBL only the remaining $119,943.61.
 
 
 10
 Columbia then filed in the United States Bankruptcy Court for the Southern District of West Virginia a motion to setoff or recoup funds held by Columbia for JBL's failure to complete work under the construction contracts. The bankruptcy court held a hearing on October 16, 1991. At the close of Columbia's presentation of its case, the bankruptcy court denied the relief sought by Columbia. The bankruptcy court found that the contracts were illusory, and therefore unenforceable, because they did not bind Columbia to any obligation. Thus, JBL won in the bankruptcy court without even having to present its case.
 
 
 11
 Columbia appealed to the United States District Court for the Southern District of West Virginia. The district court implied a promise to employ JBL exclusively to perform the work and, therefore, determined that the contracts constituted valid requirements contracts. The district court reversed the judgment of the bankruptcy court, enforced the contracts, and granted the relief sought by Columbia.
 
 
 12
 JBL appeals the decision of the district court. We vacate the decision of the district court and remand for further proceedings.
 
 II.
 
 13
 A contract is unenforceable for lack of mutuality of obligation if it fails to bind one of the parties to any sort of obligation. Morgan v. Morgan, 218 S.W.2d 410, 412 (Ky.1949); Preston v. First Bank of Marietta, 473 N.E.2d 1210, 1215 (Ohio Ct.App.1983).[1] A "requirements" contract, in which a seller agrees to provide all the goods that a buyer requires, could be considered to lack the requirement of mutuality of obligation because the buyer has no obligation to purchase any goods from the seller. Courts, however, have enforced requirements contracts where the buyer promises to purchase goods exclusively from the seller. See Hale v. Cundari Gas Transmission Co., 454 S.W.2d 680, 682-83 (Ky.Ct.App.1970); Fuchs v. United Motor Stage Co., 21 N.E.2d 669, 673 (Ohio 1939). The promise of exclusivity imposes an obligation on the buyer in return for the seller's obligation to supply all of the buyer's requirements. Even with the promise of exclusivity, the buyer has no obligation to make any purchases, but if the buyer does require goods, the promise of exclusivity obligates him to buy from the seller.
 
 
 14
 Although the contracts between Columbia and JBL were contracts for the provision of services, instead of contracts for the sale of goods, Columbia seeks to enforce its contracts with JBL as requirements contracts. Columbia contends that JBL had an obligation to perform all of the work that Columbia assigned to it during the contract year and that JBL breached this obligation when it stopped performing in September 1990. The bankruptcy court refused to enforce the contracts, however, because they did not expressly provide JBL with an exclusive right to perform all of the work required by Columbia in the geographic areas covered by the contracts.
 
 
 15
 If a court finds that the parties intended to enter into a binding contract, the court may supply missing provisions if definite terms can be discerned from the circumstances surrounding the making of the contract, the custom and practice of the industry, or of the prior dealings of the parties. Beech Creek Coal Co. v. Jones, 262 S.W.2d 174, 175-76 (Ky.1953); Reynolds Metals Co. v. Barker, 256 S.W.2d 17, 19 (Ky.1953); Knight v. Hamilton, 233 S.W.2d 969, 971-72 (Ky.1950); Hale v. Cundari Gas Transmission Co., 454 S.W.2d 680, 683 (Ky.Ct.App.1970); Oglebay Norton Co. v. Armco, Inc., 556 N.E.2d 515, 519-20 (Ohio 1990); Mr. Mark Corp. v. Rush, Inc., 464 N.E.2d 586, 589-90 (Ohio Ct.App.1983); see also Restatement (Second) of Contracts Sec. 33.
 
 
 16
 The district court concluded that Columbia and JBL intended to enter into binding contracts, and it implied a promise of exclusivity. The district court stated:
 
 
 17
 The uncontradicted evidence in this case shows that JBL and Columbia had a long-standing relationship during which JBL had performed services for Columbia like those covered by the contracts in question. The evidence also shows that the documents in question had been utilized in the past as valid contracts. The evidence further shows that JBL performed for some months under the contracts until it ran into financial difficulties. Based upon this evidence, this courts finds that the parties intended to enter into binding, enforceable contracts. In order to carry out that intent, a promise by Columbia to employ JBL exclusively to perform the work covered by the contracts should be implied by the courts.
 
 
 18
 We agree with the district court that the bankruptcy court erred in finding that the contracts were illusory without considering whether it should imply a promise of exclusivity by Columbia. However, we cannot hold that the district court, in its appellate review of the bankruptcy court's decision, properly implied the missing promise of exclusivity based on the record before it.
 
 
 19
 The district court did not have a complete record on which to decide whether it could imply a promise of exclusivity. The bankruptcy court was the trier of fact in this case. It never heard evidence from JBL because it ruled in JBL's favor after the close of Columbia's case. Thus, JBL never had a chance to argue to the bankruptcy court that an implied promise of exclusivity should not be discerned from the circumstances surrounding the making of the contract, from the custom and practice of the industry, or from the prior dealing of the parties. Although the district court based its holding on what it concluded was "uncontradicted evidence," JBL never had an opportunity to present its own evidence, which may have contradicted the evidence in the record. Before the district court can imply a promise of exclusivity, JBL at least deserves an opportunity to present its case.
 
 
 20
 Furthermore, the district court was not in a position to hear additional evidence and make additional factual findings on issues that the bankruptcy court never even reached. A district court may not make its own factual findings when reviewing a decision of the bankruptcy court. Great Western Bank v. Sierra Woods Group, 953 F.2d 1174, 1176 (9th Cir.1992); Matter of Nies, 723 F.2d 584, 589-90 (7th Cir.1983). The district court should have remanded the case to the bankruptcy court, the trier of fact, so that it could hear more evidence and make a determination on the issue of whether to imply a promise of exclusivity.
 
 III.
 
 21
 We therefore vacate the decision of the district court and remand for proceedings consistent with this opinion.[2]
 
 VACATED AND REMANDED
 
 
 [1]
 The district court applied Kentucky law to the contracts that were to be performed in Kentucky and Ohio law to the contract that was to be performed in Ohio. The parties do not challenge the choice of law on appeal
 
 
 [2]
 JBL also argues on appeal that Columbia is not entitled to damages resulting from its cessation of business because JBL closed its business in good faith. Because we have vacated the district court's decision, we need not reach this issue