### B. KITTRIDGE & CO. *v.* JUAN RIBAS.

A landlord, by virtue of a provisional seizure in a proceeding to enforce the payment of rent due, seized property on the premises belonging to an absent sub-lessee who was not indebted to the lessee for rent, and caused the property seized to be sold on final process:

*Held:*—That the property of the under-tenant was illegally seized and sold, and that he could recover of the landlord the value of the property so sold.

APPEAL from the Sixth District Court of New Orleans, *Duplantier*, J. *W. H. Hunt*, for appellant. *Durant & Hornor*, for appellee.

ILSLEY, J. The plaintiff claims from the defendant damages, and the sum of eight hundred and seventy dollars and fifty cents, the alleged value of three hundred and forty-nine empty molasses barrels belonging to them, which the defendants, the lessor of one G. B. Dyke, had, by a proceeding in the United States Provisional Court, caused to be provisionally seized, and finally to be sold under final process.

The evidence in this case shows, that Dyke had rented from Ribas, the defendant, a certain warehouse in New Orleans, at a daily rent of two dollars; that Dyke subrented the property to the plaintiffs, B. Kittridge & Co., at a monthly rent of forty dollars, which they paid punctually at the end of each month, and not by anticipation, to the lessee, Dyke, up to the 8th March, 1863, but that this lessee being in arrears for his rent to his lessor, Ribas, he caused the property found in the store, the three hundred and forty-nine empty molasses barrels, belonging not to Dyke, but to B. Kittridge & Co., to be sold in the manner before stated, to satisfy his, lessor's lien.

Under this statement of the case, we do not consider the articles of the Code and the decisions of the Court, which have reference to the property of third persons found on leased premises, as applicable to under-tenants, as the plaintiffs in this case certainly were. The law bearing upon sub-tenants is the Article 2676, Civil Code, expounded by this Court in

the cases of *Deslix* v. *Jones*, 6 Rob. 294 ; *Powers* v. *Florance*, 7 An. 524 ; *Wallace* v. *Smith*, 8 An. 374.

It was held in the case of *Simon* and *Frank* v. *Goldenburg*, 15 An. 229, that the goods and effects of the sub-lessee found on the premises that are leased, are only subject to the privilege of the lessor to the extent of the sub-lessee's indebtedness to the principal lessee ; but when such goods are seized by the lessor for rent due him, and the sub-lessee does not disclose the title under which he occupies the premises, the privilege of the lessor will cover the goods for the whole amount of the rent due; and this decision is confidently relied on by the defendant to sustain his position; that as the plaintiffs in this suit did not, in due time, make manifest their right to the property found and seized upon the leased premises, the lessor's privilege was lawfully exercised upon that property.

The doctrine taught in the case reported in 15 An., and just referred to, as well as in that of *Miles Beach* v. *John McDonogh*, 5 Rob. 352, amounts to this: When a sub-lessee stands by and sees his property in the leased premises sold under legal process to satisfy the lessor's claim for rent, without making his claim to such property known, or objecting to the sale of it, he is thereby precluded, and it is a just and equitable doctrine when applied to sub-tenants on the spot and made aware of such disposal of their property ; but, is this doctrine equally just when it is brought to bear against sub-lessees absent, not represented, and unaware of the seizure and sale of their property by the lessor? It was under this state of things that the plaintiff's property was sold. It is, indeed, a hardship that the defendant, in this suit, in the honest pursuit of a valid claim, and in utter ignorance that property found on premises leased by him, and which he might well suppose was subject to his lien, and which sold for barely sufficient to pay the costs of his suit, should afterwards find himself legally responsible to the owner of the property so, sold for the value thereof, exceeding, by far, the sum realized by the sale provoked by him, and yet, unless the rule of the law qui tacet consentire videtur precludes the plaintiff, no legal reason exists why the fair value of their goods, so improperly sold, should not be restored to them by the defendant.

In determining the true value of the three hundred and forty-nine barrels, we will not confine ourselves to the valuation put upon them by the plaintiff's witness, but will adopt in evidence between that valuation and the one made by the auctioneer, who sold the barrels for the United States marshal, in the leased warehouse, only a short time after seizure, and who testifies that they brought at the auction sale all they were worth, as they were in very bad order.

The medium rate or value of the barrels, based upon the two estimates, and which is a fair and reasonable one, is one dollar and thirty-seven and a half cents per barrel, thus making, for the three hundred and forty-nine barrels, the sum, total, of four hundred and seventy-nine dollars and

ninety-two and a half cents, and for this sum, with interest thereon, at the rate of five per cent. per annum, from the 23d May, 1863, (see Act of 1852, page 95), the plaintiffs are entitled to a judgment.

The decree of the District Court must therefore be reversed.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed. And it is further ordered, adjudged and decreed, that judgment be, and it is hereby rendered in favor of the plaintiffs, B. Kittridge & Co., and against the defendant, Jean Ribas, for the sum of four hundred and seventy-nine dollars and ninety-two and a half cents, with interest thereon, at the rate of five per cent. per annum, from the 23d May, 1863, till paid—the costs of the Court below to be paid by the defendant, and those of this Court by the plaintiff and appellee.