## LEE v. PEARSON.
### No. 1049.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

On May 5, 1930, two days after he had leased the property, Pearson leased it to Louisiana Oil Refining Corporation for the term of one year at a rental price stipulated in the contract between them as being "an amount equivalent to one (1¢) cent for each gallon of Loreco gasoline, Loreco Ethyl, gasoline and other motor fuel sold during the month at said premises by the Lessee or its agents, subtenants or assignees." There next follows a provision regulating the payment of the rent which is to be made on a monthly basis. On the same day that this so-styled "Lease" agreement was entered into, the same parties executed what is called an "Employment Agreement," under which the corporation employed Pearson to manage, superintend, and operate its gasoline filling and automobile service station, and for his services was to pay him what is termed a commission of one cent per gallon on all gasoline, motor fuel, and kerosene delivered at the station, which commission he was allowed to deduct from his payments for same. In addition, the corporation was to pay Pearson, annually, a commission on the sale of all motor oils and greases, automobile tires, tubes, etc., to be determined in a manner set out in the agreement.

Pearson paid his rent to Lee up to March 15, 1931, and upon his default thereafter, Lee instituted suit against him for the balance due under his contract and obtained a provisional seizure of all movable property on the leased premises. The rent suit was tried and judgment rendered in favor of Lee maintaining the writ of provisional seizure and ordering the sale of the seized property to pay the rent claim. Upon the property being advertised for sale, Louisiana Oil Refining Corporation came into the proceeding by way of third opposition, claiming to be the owner of the property seized, and that, as it was not indebted to Lee in any sum whatsoever, its property was not subject to any lien or privilege in his favor. Before the opposition could be heard, the sale, which was advertised to take place on November 21, 1931, was had, and the property was adjudicated to Joseph R. Lee, the lessor.

By the provisions of article 2706 of the Revised Civil Code, the right of pledge accorded to the lessor by article 2705 on the movable effects of the lessee which are found on the property leased, for the payment of his rent, is extended to those of the undertenant, "so far as the latter is indebted to the principal lessee, at the time when the proprietor chooses to exercise his right."

In this case, it is clearly established that Louisiana Oil Refining Corporation was not indebted to Pearson, plaintiff's lessee, when the seizure of the property was made. If, therefore, that company be considered an undertenant or sublessee, whatever movable effects belonged to it on the leased property

Thos. M. & Jas. T. Burns, of Covington, and Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

L. V. Cooley, Jr., of Slidell, for appellee.

LE BLANC, J.

On May 3, 1930, Joseph R. Lee leased to H. L. Pearson a parcel of land in the village of Pearl River, St. Tammany parish, on which there was located a building which was used as a garage and gasoline filling station. The contract of lease, which is written and executed under private signature, was for a period of two years, beginning May 15, 1930; the rent being fixed at the sum of $15 per month.

were not subject to seizure for the payment of·the rent claim against Pearson. If, however, Louisiana Oil Refining Corporation was not a sublessee,.the movables are subject to the lessor's pledge as being those of a third person. Revised Civil Code, article 2707.

The vital issue in the case therefore is whether Louisiana Oil Refining Corporation was an undertenant or sublessee of Pearson, or was the latter merely an agent of that corporation, employed to handle its gasoline and other oil products? The district judge, construing both agreements between them together, held that their relation was that of principal and agent, or seller and purchaser, and consequently decreed that as to plaintiff's right of pledge, the property seized was that of a third person and therefore subject to seizure.

Various attacks are leveled by counsel for plaintiff against the so-called lease agreement between the corporation and Pearson, one of his contentions being that the price is not certain and determinate as.required by article 2671 of the Revised Civil Code. That article of the Code reads as follows:

"The price should be certain and determinate, and should consist of money. However, it may consist in a certain quantity of commodities, or even in a portion of the fruits yielded by the thing leased."

We are not concerned with the latter part of the article, as the rent was not payable in commodities or in fruits yielded by the thing leased; but we believe that that provision brings out clearly what the lawmakers meant when they stipulated that the price should ·be "certain and determinate." In our opinion, it was not their intention, in using those words, that the price should be fixed at a stated amount of so many dollars and so many cents per week, month, or year. If the amount to be paid as rent could be readily ascertained, it would be sufficiently certain within the meaning of that term. That is what the Supreme Court held in the case of Logan v. State Gravel Co., 158 La. 105, 103 So. 526, in construing a lease of a sand and gravel pit wherein the rental was to be a royalty on all sand and gravel removed and shipped therefrom. A price of one cent per gallon on all gasoline delivered during a certain month appears to us to be as definite, if not more so than a royalty on sand and gravel that is removed from a pit, and it can certainly be used as a basis on which to accurately determine the total amount of rent that becomes due for that month, and fixes the price with sufficient certainty to support a contract of lease.

Counsel also urges that before Louisiana Oil Refining Corporation can avail itself of its status as sublessee, it must identify the property seized as its own, and this, it has not done. This contention, however, is not sup-

ported by the record as the testimony of A. A. Mangum, credit manager and assistant chief clerk of the corporation in charge of retail filling stations for his company, sufficiently identifies the property according to a list of equipment owned by them and placed on the premises of H. L. Pearson, which list is offered and filed in the record in connection with his testimony.

Another complaint made is that the opponent, Louisiana Oil Refining Corporation, has failed to disclose the title under which it occupied the leased premises, as it was obliged to have done. On this point, counsel for plaintiff concedes that there is no such requirement prescribed by the Code, but he relies for support on a decision in the case of Simon & Frank v. Goldenberg reported in 15 La. Ann. 229. The effect of the decision cited can better ·be understood by referring to the comments of the court in a case which followed not long after. We refer to the case of B. Kittridge & Co. v. Juan Ribas, 18 La. Ann. 718, from which we quote:

"It was held in the case of Simon and Frank v. Goldenberg, 15 La. Ann. 229, that the goods and effects of the sub-lessee found on the premises that are leased, are only subject to the privilege of the lessor to the extent of the sub-lessee's indebtedness to the principal lessee; but when such goods are seized by the lessor for rent due him, and the sub-lessee does not disclose the title under which he occupies the premises, the privilege of the lessor will cover the goods for the whole amount of the rent due; and this decision is confidently relied on by the defendant to sustain his position; that as the plaintiffs in this suit did not, in due time, make manifest their right to the property found and seized upon the leased premises, the lessor's privilege was lawfully exercised upon that property.

"The doctrine taught in the case reported in 15 La. Ann., and just referred to, as well as in that of Miles Beach v. John McDonough, 5 Rob. 352, amounts to this: When a sub-lessee stands by and sees his property in the leased premises sold under legal process to satisfy the lessor's claim for rent, without making his claim to such property known, or objecting to the sale of it, he is thereby precluded, and it is a just and equitable doctrine when applied to sub-tenants on the spot and made aware of such disposal of their property; but, is this doctrine equally just when it is brought to bear against sub-lessees absent, not represented, and unaware of the seizure and sale of their property by the lessor?"

The court then answers its own question by holding that the doctrine does not apply in such cases. It ruled that notwithstanding the hardship it placed on the defendant due to the circumstances therein appearing (the sub-tenants' goods having already been sold), there was no legal reason why their value

should not be restored to the plaintiff, who was the sublessee in that case.

In the case before us, the alleged sublessee, even though an absentee, did not remain inactive after its goods had been seized and before the sale took place. It proceeded by way of intervention and third opposition to assert its title of ownership to the property and to dispute the lessor's right to any privilege claimed by him. Surely the principle contended for cannot be successfully invoked against it.

This brings us now to a consideration of the last contention on the part of the lessor and the one on which the decision went in his favor in the lower court, namely, that the relation between Louisiana Oil Refining Corporation and Pearson was merely that of principal and agent, and not that of lessee and sublessee.

It will be remembered that the two agreements between Pearson and the corporation were entered into on the same day, and that in both there was a consideration of one cent per gallon for each gallon of Loreco gasoline (the Louisiana Oil Refining Corporation's brand) and other motor fuels handled at the filling station each month. The district judge, construing these two' documents together, as he had the right to do, came to the conclusion that they both resulted in establishing a relationship of principal and agent, or of seller and purchaser. He based his opinion and conclusion on the fact that the agreements were entered into on the same day, related to the same subject-matter with the same basis of consideration, and that Pearson, the alleged lessor of the corporation, remained in possession of the property. These matters may justly have aroused the suspicion of the district judge and led him to believe that the real purpose of the whole arrangement was an employer's agreement and that the contract of lease was only a subterfuge to defeat the privilege of the principal lessor. However justifiable such suspicion might have been in a case where the corporation's alleged lessor remained in charge of the filling station and continued to conduct the business, the actions and conduct of the parties in this case clearly revealed that the agreements embodied their true intentions and that it was not their purpose to evade any law relating to the pledge and privilege of lessors. We refer to the fact, fully established and not contradicted, that before the expiration of the agreement, Pearson abandoned his position as manager and superintendent of the filling station, some one else was employed in his place, and nevertheless the corporation continued to pay him monthly one cent per gallon on the gasoline that was sold at the station. That, says Mangum, witness for the third opponent, was all that was paid him after he left his employ, and it was for the rental that was due him. Indeed, in our opinion, it could not be for anything else but rent, as he was no longer rendering any service. Mangum's testimony on this point is substantiated by copies of the monthly invoices filed in the record covering a period of time after Pearson had left the station, and in which he is given a credit of one cent per gallon of gasoline sold, as rental for the month preceding that in which the invoice is made.

The district judge makes no reference to . this part of the evidence, nor does he seem to have given any consideration to its effect. We believe, however, that it places an entirely different phase on the point involved, and is the determining factor to be considered.

A general rule of construction is that where the nature of a contract is difficult of interpretation, the manner in which it has been executed by the parties is a proper criterion to ascertain its true meaning and character. Applying that rule to the facts in this case and to the conduct of the parties, we are bound to hold that there was a valid sublease agreement between Pearson and Louisiana Oil Refining Corporation, and that as the corporation, sublessee thereunder, was not indebted to Pearson, the principal lessee, plaintiff Lee, who was Pearson's lessor, has no pledge or privilege on the property seized.

For the foregoing reasons, it is therefore ordered, adjudged, and decreed that the judgment of the lower court be and the same is hereby annulled, set aside, and reversed; and it is now further ordered, adjudged, and decreed that there be judgment in favor of Louisiana Oil Refining Corporation, maintaining its opposition herein, and that the sheriff's sale held herein on November 21, 1931, be and the same is hereby set aside, avoided and annulled in so far only as it affects the property of opponent.

It is further ordered that plaintiff and appellee pay all cost of this proceeding.