434 So.2d 668 (1983)
Harris THERIOT, et al., Plaintiffs-Appellants,
v.
ST. MARTIN PARISH SCHOOL BOARD, et al., Defendants-Appellees.
No. 82-817.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
Lester J. Gauthier, Jr., Lafayette, for plaintiffs-appellants.
Pugh & Boudreaux, Charles J. Boudreaux, Jr., and James R. Shelton, Voorhies & Labbe, Richard D. Chappuis, Jr., Lafayette, for defendants-appellees.
Before FORET, CUTRER and LABORDE, JJ.
CUTRER, Judge.
This is an appeal from a trial court judgment which granted defendants' motion for a directed verdict and a motion for dismissal.
Gary Theriot, then a sixteen-year-old student severely lacerated his hand in a table *669 saw accident at the Career Center[1] of the St. Martin Parish School Board (School Board) on October 21, 1980. The accident occurred during a class taught by Charles Dupuis. At the time of the accident Gary was employing the saw to cut a piece of plywood. He had been a member of this class for about seven months. The class met three hours each morning five days a week.
Harris Theriot, Gary's father, filed suit individually and on behalf of Gary against the School Board, its insurer, St. Paul Fire & Marine Insurance Company (St. Paul), and against Charles Dupuis and his insurer, Horace Mann Insurance Company. Theriot's petition alleged the concurrent negligence of Dupuis and the School Board and sought general and special damages.
The trial was bifurcated in that the liability of Dupuis, his insurer and St. Paul, the School Board's insurer, was to be tried before a jury, while the liability of the School Board was to be decided by the trial judge.[2] At the close of plaintiff's evidence the teacher, his insurer and St. Paul filed a motion for a directed verdict. The School Board filed a motion for a dismissal. The trial judge granted these motions and dismissed plaintiff's suit. Plaintiff appeals. We reverse and remand.
The issues of plaintiff's appeal are whether the trial court erred in granting the motion for a directed verdict and the motion for dismissal.
Since a motion for a directed verdict in a jury case and a motion for dismissal in a non-jury case require the application of two different standards of proof, we must treat each motion separately.

MOTION FOR DIRECTED VERDICT
LSA-C.C.P. art. 1810, paragraph A, authorizes a directed verdict in jury cases at the close of the plaintiff's case. This statute provides as follows:
"A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."

The standard of proof by which the trial judge was to use in deciding a motion for a directed verdict was not set forth in the statute. This court, in the case of Campbell v. Mouton, 373 So.2d 237 (La. App. 3rd Cir.1979), set forth the standard as follows:
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
*670 This standard has been approved by the Supreme Court in the case of Breithaupt v. Sellers, 390 So.2d 870 (La.1980).
In granting Dupuis', his insurer's, and St. Paul's motion for a directed verdict the trial judge gave oral reasons for judgment. The trial judge, citing the case of Green v. Orleans Parish School Board, 365 So.2d 834 (La.App. 4th Cir.1978), writ den., 367 So.2d 393 (La.1979), set forth the duties and responsibilities of a teacher toward their students.
The trial court then held that the plaintiff failed to carry the burden of proof to show that Dupuis, the teacher, had committed any breach of duty owed to his student, Gary.
The trial court evaluated the credibility of plaintiff's expert, Stanley Day, and concluded that Day's testimony could not be used to determine whether Dupuis breached the standards of care required of teachers.
The trial court, having held that plaintiff had failed to prove Dupuis' negligence by a preponderance of the evidence then concluded that the School Board, as an employer of Dupuis, was free of negligence. He also held that, even if Dupuis was negligent, that Gary Theriot was guilty of contributory negligence and an assumption of the risk. The court then concluded as follows:
"[T]he Court will therefore sustain the motion for directed verdict and motions for dismissal ...."
It is to be noted that the same standard was used to determine both the motion for a directed verdict and the motion for dismissal; i.e., standard of "preponderance of the evidence."
The application of the "preponderance of the evidence" rule by the trial court was error. Campbell v. Mouton, supra, specifically held that a trial court erred in applying the standard of "preponderance of the evidence" in deciding a motion for a directed verdict.
The standard set forth in Campbell can be summarized as follows: A directed verdict can be granted only if the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict. With this standard in mind we examine the evidence presented by plaintiff.
On the day of the accident, Gary, sixteen years old, had been a member of the carpentry class at the Career Center for a period beginning in September 1979, until the accident on March 21, 1980.
On this latter day, Gary asked Dupuis for permission to use the Rockwell table saw for the purpose of cutting a piece of ½ plywood to be used on a cabinet project he was working on. The permission was given by Dupuis and Gary proceeded with the cut. As the cut was being made, Gary was pushing the board through with a "push stick" which he held in his right hand. As the cut was in progress, the piece of plywood between the blade and the "fence" began to wobble and jump upward to some extent. Gary, with his left hand, reached over to the end of the board and attempted to stabilize the board. As he placed his left hand upon the board, the board kicked back, throwing his left hand into the blade causing a severe hand injury.
Gary, along with some of his classmates, testified that Dupuis had never taught him, or any other member of the class, to use a blade guard while making a cut with this table saw. Also, they were not informed of the use of anti-kickback fingers or a splitter. These were devices to be used with the saw to keep the material being cut from kicking back as happened in this case. These students all testified that Dupuis had never instructed them in the use of these safety devices in their use of the saw. They were only taught to use the saw without any guard or other safety device.
At the time of the accident a blade guard was available but there is a dispute as to whether it was operable. The blade guard, when not being used, remains attached to the table of the saw along the side of the machine.
*671 The operating manual, which was available to Dupuis for instructions, contained safety suggestions which were printed in large, bold type. Among the several safety suggestions were the following which are particularly applicable to this case:
"6. GUARDS should be in place and used at all times.
7. ALWAYS use splitter and anti-kick back fingers when ripping."
Dupuis, when questioned about these suggestions, stated that he went over these safety rules with the students at the beginning of the semester when he was orienting the students as to the use of all the machines to be used by the class. He admitted, however, that he did not give them the suggestions # 6 and # 7 which provided that blade guards must be used at all times when the saw was in use. Also, a splitter and anti-kickback fingers were to be used when ripping a board, as Gary was doing at the time of the accident.
As to the use of the guard, Dupuis testified that he did not recommend the use of a guard to the class because guards were not generally used by carpenters in the industry. He felt that the students should learn to work without the guard in order to prepare them for industrial work. He stated, however, that he did show them how a guard worked. Dupuis, according to his testimony, did not seem to be familiar with the anti-kickback fingers or a splitter safety device that were available for use with this machine. Dupuis admitted that Gary's injury could have been avoided by the use of the blade guard.
Wesley Serrette, supervisor of the Career Center at the time of this accident, testified that he knew Dupuis was instructing his class on the use of the saw without the guard, but Serrette also testified that he had witnessed Dupuis instructing some students on the use of the saw with the guard in place before Gary's accident. Serrette added that he knew part of the guard was broken on the day of the accident but that the guard was still functional.
Stanley Day was qualified and accepted as an expert in the field of occupational and industrial safety. Day testified that, although he has had no continuous experience in the operation of table saws, he has been exposed to them a number of times at various construction sites.
Having examined the particular table saw in question and consulted the manual that accompanied this machine, Day concluded that this table saw was designed to be used with the blade guard in place. Day further testified that the manual stated that: "Guards should be in place and used at all times."
Summarily, Day testified that it was his opinion that it is an unsafe practice to operate a table saw without a guard in place. Day also testified that, in his opinion, Gary's accident was caused by a hazardous condition (unguarded blade), a hazardous procedure or method (Dupuis' instruction as to use of saw without a guard in place), and inadequate supervision (Dupuis and Career Center's policy of allowing the saw to be used without the guard in place).
This testimony regarding Dupuis' instruction and supervision was in conflict. To resolve this conflict, an evaluation of the weight and credibility of the testimony must be made by the trier of fact. When the trier of fact is a jury, the evaluation of credibility and weight of testimony must be made by that body. The same can be said as to a resolution of the issue of contributory negligence or assumption of the risk.
The jurisprudence governing the duties of teachers toward students is well settled. In the case of Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3rd Cir.1977), writs den., 352 So.2d 1042, 1045 (La.1977), this court stated these duties as follows:

"[S]chool teachers charged with the duty of superintending children in the school must exercise reasonable supervision over them, commensurate with the age of the children and the attendant circumstances. A greater degree of care must be exercised if the student is required to use or to come in contact with *672 an inherently dangerous object, or to engage in an activity where it is reasonably foreseeable that an accident or injury may occur. The teacher is not liable in damages unless it is shown that he or she, by exercising the degree of supervision required by the circumstances, might have prevented the act which caused the damage, and did not do so. It also is essential to recovery that there be proof of negligence in failing to provide the required supervision and proof of a causal connection between that lack of supervision and the accident....." (Citations omitted.)

Whether Dupuis' method of conducting and supervising the class in question breached the duty of teacher toward student is a factual matter to be resolved by the jury.
We conclude that there is evidence in this case which, when viewed in light most favorable to the plaintiff, is of such weight and quality that reasonable and fairminded persons, in the exercise of impartial judgment, may reach different conclusions. Under these circumstances, the motion for a directed verdict filed by Dupuis, his insurer, and St. Paul, the insurer of the School Board, must be denied, the case remanded and a new trial ordered. The trial judge erred in granting the motion for a directed verdict and his judgment shall be reversed.

MOTION FOR DISMISSAL FILED BY THE SCHOOL BOARD
The trial judge, in the non-jury portion of this case, granted the School Board's motion to dismiss, using the standard of the "preponderance of the evidence." Such standard is available in a motion to dismiss. Sevin v. Shape Spa for Health & Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980).[3] We do not, however, reach a decision as to the correctness of the trial court's decision to grant the motion to dismiss.
The issue of Dupuis' negligence is presented in both portions of this bifurcated trial. The jury must decide the issue as Dupuis is a party defendant. The issue is also presented to the trial court for decision since the School Board's liability is dependent primarily on whether Dupuis was negligent. Having decided to remand and grant a new trial in the jury portion of this bifurcated trial, it becomes necessary that we remand the trial court portion of the case to be decided after the close of the case and not at this stage of the proceedings. This procedure would free the jury to render a verdict without a prior court decision on the issue of Dupuis' negligence. Therefore, in the interest of justice[4] we shall set aside the judgment of the trial court granting the School Board's motion to dismiss and also remand this portion of the case for a decision by the trial court at the close of the evidence.
For these reasons, the portion of the trial court judgment granting the motion for a directed verdict is reversed and set aside. The portion of the trial court judgment granting the motion to dismiss is set aside. The suit is remanded for a new trial in accordance with law and the views expressed herein. The costs of this appeal are to be paid by defendants-appellees.
REVERSED AND REMANDED.
NOTES
[1] Career Center is a vocational school affiliated with the School Board. Classes taught at the Career Center encompass an intensive and extensive training program for students desirous of entering a trade upon graduation from high school.
[2] The suit against the School Board, a public body, was tried non-jury, pursuant to LSA-R.S. 13:5105. The suit against the School Board's insurer, however, is triable by jury. Duplantis v. U.S. Fid. & Guaranty Ins. Corp., 342 So.2d 1142 (La.App. 1st Cir.1977).
[3] LSA-C.C.P. art. 1810(B) provides:

"B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence."
[4] LSA-C.C.P. art. 2164 provides, in pertinent part:

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."