450 So.2d 410 (1984)
Edmond MOUTON, Plaintiff-Appellant,
v.
P.A.B., INC., Defendant-Appellee.
No. 83-679.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
Rehearing Denied June 14, 1984.
*411 G. Paul Marx, Lafayette, for plaintiff-appellant.
William H. Lambert, Lafayette, Sandoz, Sandoz & Schiff, Leslie J. Schiff, Opelousas, for defendant-appellee.
Before CUTRER, STOKER and KNOLL, JJ.
KNOLL, Judge.
The plaintiff, Edmond Mouton, brought a summary eviction proceeding against P.A.B., Inc., the defendant. Mouton appeals the judgment sustaining defendant's motion for dismissal of this action. We reverse and render.
On March 23, 1978 Edmond Mouton and P.A.B., Inc. (hereafter P.A.B.) entered into a written lease wherein Mouton agreed to lease to P.A.B. certain immovable property in Vermilion Parish for the establishment of a sanitary landfill and/or a site for the disposal of non-toxic liquid wastes. The primary term of the lease was ninety-nine (99) years commencing on March 23, 1978. The lease provided for rent as follows:
"The rental to be paid by the Lessee to the Lessor during the lease period shall be one-half (½) the net profit earned by Lessee, received from the fees charged to those individuals, firms or corporations using the facility for dumping purposes."
There is no evidence in the record showing what, if any, rental payments were made in 1978 and 1979. In 1980 Mouton was paid rent totaling $41,750, and in 1981 $35,000. It is undisputed that P.A.B. made no rental payments since June of 1981.
In September of 1981 Mouton filed a petition against P.A.B. to cancel the surface lease for non-payment of rent and, in the alternative, seeking $100,000 for unaccounted rental payments. Mouton later supplemented his original petition by filing a motion to summarily evict P.A.B. from the premises described in the lease agreement alleging that P.A.B. had failed to pay rent for more than one year.
A hearing on the summary eviction proceeding was held on March 14, 1983. At the close of Mouton's case, P.A.B. moved for a verdict of dismissal based on the alleged failure of Mouton to prove that there was a failure to pay one-half of the *412 net profit as rent. The trial court concluded that Mouton failed to establish net profits of the corporation which had not been disbursed as rental payments, and, that Mouton should prove his claim in the pending ordinary proceeding for cancellation of the lease.
Mouton contends that the trial court erred in concluding that he failed to submit sufficient evidence in the summary proceeding to warrant eviction and in holding that his claim should be considered in an ordinary proceeding. At trial, P.A.B. argued that the $30,000 was not profit because it was dedicated to contingent expenses, i.e., use as payment for a closure bond and the payment of undetermined future costs incident to possible requirements for upgrading the dump site by the Department of Natural Resources.
A lessor is authorized to bring a summary proceeding to evict his lessee for non-payment of rent. Himbola Manor Apartments v. Allen, 315 So.2d 790 (La. App. 3rd Cir.1975). The lessee is bound to pay the rent according to terms of the agreement. LSA-C.C. Art. 2710. If the lessee fails to pay the rent when, due, under LSA-C.C. Art. 2712 he "may be expelled from the property."
Eviction proceedings are summary in nature. Intern. Matex Tank Terminals v. System Fuels, 398 So.2d 1029 (La. 1981). The purpose of summary eviction is the return of the possession of property to the rightful owner with a minimum delay. Papa v. Sullivan, 268 So.2d 326 (La.App. 2nd Cir.1972). The action for eviction involves the single issue of whether the lessor is entitled to the leased premises. Soileau v. Knighten, 423 So.2d 61 (La.App. 1st Cir.1982); Vicknair v. Watson-Pitchford, Inc., 348 So.2d 695 (La.App. 1st Cir. 1977).
In non-jury cases, as in the case at hand, the appropriate standard for the trial court's determination of a motion for a judgment of dismissal is whether plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. Matter of Aaron, 417 So.2d 105 (La.App. 3rd Cir.1982); Bradley v. Hunter, 413 So.2d 674 (La.App. 3rd Cir.1982) writ denied 415 So.2d 952 (La.1982). In making its determination on such a motion, the trial court is not required to review the evidence in a light most favorable to plaintiff, but may render judgment in favor of the mover using the standard of the preponderance of the evidence. Theriot v. St. Martin Parish School Board, 434 So.2d 668 (La.App. 3rd Cir.1983); Sevin v. Shape Spa for Health & Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980). Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proved is more probable than not. Parr v. Kelly, 420 So.2d 1187 (La.App. 5th Cir.1982); Gleason v. City of Shreveport, 393 So.2d 827 (La. App. 2nd Cir.1981); Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971).
Mouton premised his eviction action on the allegation that P.A.B. had net profits from the operation of its disposal facility yet failed to pay him property rent for more than one year.
The lease agreement between Mouton and P.A.B. does not define the term "net profit." In a contract of lease the price or rent must be certain and determinate. LSA-C.C. Art. 2671. The Supreme Court upheld the lease of a race horse, where the stipulated rent was one-half of the net profits derived from the horse's winnings. Hardy v. Lemons, 36 La.Ann. 146 (1884). Accordingly, the provision for consideration in the lease at issue, e.g., the division of the net profits derived from the disposal of liquid wastes, instead of a fixed price, did not invalidate the lease contract. Hardy, supra.
There is no designation in the lease agreement when P.A.B. was to pay its rent to Mouton. Rent must be stipulated and agreed upon between the contracting parties before there is a valid lease contract. McCain v. McCain Bros., 165 La. 884, 116 So. 221 (1928). Nevertheless, it is not essential *413 that the rent be fixed at a specified sum of money per week, month or year. Lee v. Pearson, 143 So. 516 (La.App. 1st Cir.1932). Rent is always sufficiently certain if it can be readily ascertained. Logan v. State Gravel Co., 158 La. 105, 103 So. 526 (1925); Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969); Lafayette Airport Commission v. Roy, 265 So.2d 459 (La.App. 3rd Cir.1972), cert. denied 411 U.S. 916, 93 S.Ct. 1543, 36 L.Ed.2d 307 (1973). As long as the rent can be determined from factors or circumstances not within the control of the parties, the rent is certain. In the case at hand, the amount of rent P.A.B. paid was determined from a set of ledger books maintained by Mary Abshire. The record shows that Mouton regularly received rent from P.A.B., on the fifteenth of every month, for a period of eighteen months, when P.A.B. ceased to pay rent in June of 1981.
When P.A.B. and Mouton negotiated this lease all of P.A.B.'s stock was owned by Mary and Alex Abshire. From the inception of the lease agreement, Mary Abshire (wife of Alex Abshire) kept a special ledger for the purposes of posting the income and expenses attributable to the Mouton property in order to determine net profit. Until July 1981, she calculated net profits monthly from the ledger sheets.
The primary factual determination made by the trial court was the characterization of a $30,000 expenditure in July 1981 by P.A.B. as an expense. This alleged expense coincides with the cessation of rental payments to Mouton.
Alex Abshire testified that in June 1981 the State Department of Natural Resources demanded P.A.B. to post a $100,000 closure bond for the dump site. To satisfy this requirement, the Abshire's provided the State with a personal letter of credit drawn on a local bank. There is no evidence that the Abshire's ever paid the $100,000 indebtedness, or how this liability was handled after they obtained the letter of credit.
When P.A.B. discontinued paying monthly rent to Mouton, it initiated a cash reserve fund to build up interest. In July 1981, $30,000 of profit was set aside in an E.F. Hutton account. An additional $5,000 was invested in the same account in October 1981.
On February 19, 1982, eight months after P.A.B. stopped paying rent, the Abshires sold their P.A.B. stock. The E.F. Hutton account was closed out and the funds on deposit were credited as income on the ledger sheets maintained on the Mouton property. The invested monies were never used to satisfy the closure bond nor was any of it used to pay rent.
Mouton's rent prior to July 1981 was paid according to the fees and charges involving the dump facility as reflected in the income and expense sheets maintained by Mary Abshire. The shift to an accrual method of accounting after July 1981 represents unilateral action by the Abshires and P.A.B., to provide for contingent expenses heretofore foreign to the working agreement between Mouton and P.A.B.
LSA-C.C. Art. 1950 provides:
"When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."
LSA-C.C. Art. 1956 states:

"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." (Emphasis added)

See: RTL Corp. v. Manufacturer's Enterprises, Inc., 429 So.2d 855 (La.1983); Chevron U.S.A. v. Martin Exploration Co., 432 So.2d 886 (La.App. 1st Cir.1983); Crow Drilling and Producing Co. v. Hunt, 254 La. 662, 226 So.2d 487 (1969).
For over eighteen months, rental payments ascertained from ledger sheets which established the cash flow to and from P.A.B. were made to Mouton. Prior *414 to July 1981 neither Mouton nor P.A.B. utilized any form of accrual accounting. To allow P.A.B. to unilaterally change the method of determining net profit would permit P.A.B. to circumvent the lease and deny Mouton his right under the lease agreement to receive rent.
The $30,000 was profit. It remained profit when it was invested in E.F. Hutton, and was designated as profit when it was returned to the P.A.B. account when the Abshires sold their P.A.B. stock. We find this sum represented undispursed net profit, therefore Mouton is entitled to have P.A.B. summarily evicted from the leased premises.
For the foregoing reasons the judgment of the trial court granting defendant's motion for dismissal is reversed and the relief requested by plaintiff, Edmond Mouton, for the eviction of the defendant, P.A.B., Inc., from the leased premises is hereby granted. All costs incurred in the district court as well as on appeal are assessed against the defendant, P.A.B., Inc.
REVERSED and RENDERED.
CUTRER and STOKER, JJ., concur.