GUIDRY, Judge.
Plaintiff brought suit against defendant, Fidelity and Casualty Company of New York (Fidelity), the liability insurer of the Veterans of Foreign Wars, Champagne Bu-sinick Post # 2130, as a result of an accident occurring when she slipped and fell while leaving the VFW hall after attending a BINGO and dance. At the close of plaintiff’s case, Fidelity moved for a directed verdict based upon plaintiff’s alleged failure to make out a prima facie case against *1148 the defendant. The trial judge granted the motion, taking the case away from the jury, and dismissed plaintiffs demands at her cost. From that judgment plaintiff appeals.
The correct standard for a trial judge to apply in considering a defendant’s motion for a directed verdict in a jury trial was enunciated by this court in Campbell v. Mouton, 378 So.2d 237 (La.App. 3rd Cir.1979), wherein we stated:
“The motion for directed verdict is a common law procedural device which has only recently found its way into the law of Louisiana through Article 1810 of the Code of Civil Procedure. The purpose of the directed verdict is that ‘it serves judicial efficiency by allowing the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict.’ Civil Procedure — Work of Louisiana Legislature for 1977 Regular Session, 38 La.L.Rev. 152, 157 (1977); See also Williams v. Slade, 431 F.2d 605 (5th Cir.1970).”
See also Breithaupt v. Sellers, 390 So.2d 870 (La.1980); Theriot v. St. Martin Parish School Bd., 434 So.2d 668 (La.App. 3rd Cir.1983).
In evaluating the facts and inferences in the record, the trial judge should view them in a light most favorable to the non-mover. King v. Commercial Union Ins. Co., 425 So.2d 358 (La.App. 3rd Cir.1982), writ, denied, 429 So.2d 146 (La.1983).
Only two witnesses testified on the issue of liability, the plaintiff, Dula T. Gotreaux, and her husband, Wilson Gotreaux. Both witnesses agreed on the following facts. Mr. and Mrs. Gotreaux had been to the YFW hall several times previously. Neither had ever experienced any problems walking or dancing on the hall’s floor in the past. On the night of the accident, the couple arrived at the hall at approximately 6:30 p.m. They played BINGO until the game ended and then remained for approximately another hour to participate in the dance which followed. The couple danced two or three times without incident. Mr. and Mrs. Gotreaux, while dancing, did not fall or notice anyone else fall and neither reported an unusually slippery condition of the floor to anyone. The Gotreauxs heard no one else complain about the dance floor being too slippery. After having been in the VFW hall for about four hours, the Gotreauxs decided to leave. They traversed the length of the building and when they reached a point about fifteen feet from the exit, Mrs. '’Gotreaux, for some reason not evident in the record, fell. In this latter connection, Mrs. Gotreaux testified:
“Q. Sure, uh, huh. (yes) Now, when you fell, Mrs. Gotreaux, didn’t you first tell us that your foot turned, or your ankle turned?
A. I don’t know what happened.
Q. Well, isn’t that what you said?
A. I can’t tell you what happened.
Q. Well ...
A. If my ankle — I don’t know. The first thing I knew, my foot was gone.
Q. Okay.
A. And I grabbed to my husband’s arm, and when I did, we — he fell on me.”
Both Mr. and Mrs. Gotreaux candidly testified that neither observed the presence of any foreign substance at or near the spot where Mrs. Gotreaux fell.
The only statement by either party that might tend to establish any liability on the part of the hall and consequently on the defendant was a self-serving statement by plaintiff that, while she and Mr. Gotreaux were crossing the dance floor before the dance began, she noticed the floor seemed slipperier than usual. In contrast, Mr. Go-treaux testified that he noticed no such condition.
Miller v. Smith, 402 So.2d 688 (La.1981) is a case similar to the one under consideration. In affirming the appellate court which rejected the Millers’ demand, the Supreme Court stated:
“The evidence was properly analyzed in the Court of Appeal opinion. Mrs. Miller *1149 saw the bartender apply the wax just before the music started, but neither she nor any other person noted the manner of application on that evening. The cause of Mrs. Miller’s fall is not clearly established. She and her husband danced the first number and completed it in spite of noticing that it was ‘unusually slippery.’ Returning to their table, Mr. Miller attempted to alert Mrs. Miller to a shadow on the floor which he suspected was wax; she noted a ‘shadow of something a little dark,’ but not in time to prevent her falling.
There was, however, no other evidence of any foreign substance,[1] wax or otherwise, on the floor where Mrs. Miller fell. There was testimony from other witnesses that the dance floor was slick on the night of the fall, but the dancing continued into the night with no complaints from the dancers that the floor was too slippery.
Not only does the proof fall short of establishing that Mrs. Miller fell because of some foreign substance on the floor, but it is also short of establishing that the floor was defective or dangerously slippery. Dance floors need to be smooth, and perhaps even ‘slippery’, enough for shoes to slide easily on the floor; but the record does not establish that this floor was unreasonably slick for the purpose for which it was designed and used.”
Appellant argues that the Miller case is not applicable since Miller was decided after a full trial rather than on a motion for directed verdict. We find no merit in this argument. In Miller v. Smith, supra, much more evidence was presented by the plaintiff than in the present suit. Not only did both Mr. and Mrs. Miller testify as to the dangerous condition of that dance floor, but their testimony was buttressed by independent witnesses. Similar evidence was not presented by plaintiff in her case in chief, rather, she simply stated that the floor seemed “slipperier than usual”, a statement not supported by the testimony of Mr. Gotreaux, the only other witness who testified.
In light of the evidence adduced during the presentation of plaintiff’s case in chief, we conclude that the trial judge did not commit error in granting defendant’s motion for directed verdict. The trial judge’s obvious conclusion that the record contains no evidence of such quality and weight that reasonable and fair-minded men, in the exercise of impartial judgment, could not have disagreed on the issue of defendant’s liability is well founded.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. Costs of this appeal are to be taxed against appellant.
AFFIRMED.

. “ Earlier Court of Appeal cases involving falls on dance floors indicate that plaintiffs have recovered where they demonstrated the presence of a foreign substance on the floor, and testimony revealed that the substance’s presence was reported to an employee of defendant before plaintiff slipped. See Rosensweig v. The Travelers Insurance Co., 333 So.2d 334 (La.App. 4th Cir.1976) and Roberts v. Courville, 162 So.2d 750 (La.App. 1st Cir.1964). On the other hand, a plaintiff who alleged that a dance floor was dangerously slippery was denied recovery where a court found that the defendant kept the floors in reasonably safe condition and was not told that the floor was excessively waxed. See Champagne v. Harahan Lions Club, Inc., 243 So.2d 292 (La.App. 4th Cir.1971).”